United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 28, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 03-30728

---

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

        versus

RANDALL WALLACE,

                                        Defendant-Appellant.

---

Appeal from the United States District Court
for the Western District of Louisiana

---

Before GARWOOD, JOLLY and BARKSDALE, Circuit Judges.

GARWOOD, Circuit Judge:

    Randall Wallace (Wallace) appeals the forfeiture of his airplane pursuant to his guilty-plea conviction for operation of an unregistered aircraft.  We affirm.

### Facts and Proceedings Below

    On May 28, 2001, Wallace was met by local sheriff's department officers after arriving at the Springhill, Louisiana airport in his Cessna airplane.  The local officers intercepted Wallace at the

request of United States Customs Service agents, who had been investigating Wallace on suspicion of transporting illegal drugs. Wallace was arrested for possession of a concealed weapon, but was later found not guilty of this charge in state court. While at the airport, Wallace consented to searches of his airplane and truck. No contraband was found in these searches or in later searches by the Customs Service. The Customs Service seized the airplane and took it into custody for this further testing.

Wallace was unable to produce registration papers for the airplane. According to a Customs Service agent's affidavit, Wallace told one of the local officers in Springhill that he had registered the plane in his father's name to conceal its ownership during Wallace's divorce. The most recent Federal Aviation Administration (FAA) registration certificate for the plane was issued to the Arkansas Forestry Commission in 1988. Forestry Commission records indicate that the commission sold the plane to Wallace in 1993.

On November 21, 2002, a three-count Indictment against Wallace was filed in the U.S. District Court for the Western District of Louisiana, Shreveport Division. Count one of the Indictment charged Wallace with owning and knowingly and willfully operating an unregistered aircraft in violation of 49 U.S.C. § 46306(b)(5)(A). Count two charged him with knowingly and willfully operating the unregistered aircraft in violation of 49 U.S.C. §

2

46306(b)(6)(A).[1]  Each offense was alleged to have been committed "on or about May 28, 2001, in the Western District of Louisiana." Count three sought forfeiture of Wallace's airplane pursuant to 49 U.S.C. § 46306(d)(1), which allows forfeiture of an aircraft "whose use is related to a violation of subsection (b)."  49 U.S.C. § 46306(d)(1).  On April 2, 2003, Wallace pleaded guilty to count one pursuant to a plea agreement in which the government agreed to dismiss count two.

A bench trial on the forfeiture count was held on April 9, 2003, at which the district court ordered the parties to brief the issue of whether forfeiture of the airplane would violate the Excessive Fines Clause of the Eighth Amendment under the Supreme Court's holding in *United States v. Bajakajian*, 118 S.Ct. 2028 (1998).  The presentence investigation report indicated that Wallace had no criminal history and that there was no applicable or analogous Sentencing Guideline for his offense.  On July 10, 2003, the district court sentenced Wallace to one year of unsupervised probation and a special assessment of one hundred dollars for the guilty-plea conviction under count one of the Indictment, and ordered forfeiture of the airplane.

## Discussion

---

[1]Subsection (b)(5)(A) applies to the owner of the aircraft, whether he operates the aircraft himself, attempts to operate it, or allows someone else to operate it.  49 U.S.C. § 46306(b)(5)(A).  Subsection (b)(6)(A) applies to one who operates or attempts to operate the aircraft, whether or not he owns it.  49 U.S.C. § 46306(b)(6)(A).  Because Wallace owned the airplane and operated it himself, he was chargeable under both subsections.

## I.  Standard of Review

We review a district court's findings of fact following a bench trial for clear error, and its conclusions of law *de novo*. *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003).  Whether the forfeiture is excessive under the Eighth Amendment is a question of law we review *de novo*. *Bajakajian*, 118 S.Ct. at 2037 & n.10; *United States v. Brown*, 250 F.3d 907, 913 (5th Cir. 2001).

## II.  The Supreme Court's Excessiveness Standard From Bajakajian

The defendant in *Bajakajian* attempted to carry more than $350,000 out of the United States without reporting the currency as required by federal law for amounts over $10,000.  *Bajakajian*, 118 S.Ct. at 2031; 31 U.S.C. § 5316(a).  Federal law also requires a sentencing court to order forfeiture of any property involved in a violation of the reporting requirement.  *Bajakajian*, 118 S.Ct. at 2032; 18 U.S.C. § 982(a)(1).  The maximum fine under the Sentencing Guidelines for the defendant's reporting offense was $5000.  *Bajakajian*, 118 S.Ct. at 2032.  The Supreme Court held that forfeiture of the entire $357,144 involved would violate the Excessive Fines Clause.  *Id.* at 2029–30.

More generally, the Court held that "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense."  *Id.* at 2036.  In arriving at the "grossly disproportional" standard, the

4

Court found two considerations "particularly relevant": 1) "that judgments about the appropriate punishment for an offense belong in the first instance to the legislature," and 2) "that any judicial determination regarding the gravity of a particular criminal offense will be inherently imprecise." *Id.* at 2037. The Court noted that "[b]oth of these principles counsel against requiring strict proportionality between the amount of a punitive forfeiture and the gravity of a criminal offense." *Id.*

With respect to the defendant's currency reporting violation, the Court stated that the crime was "solely a reporting offense," and that because the defendant was not found to have been involved in other illegal activities such as drug trafficking, money laundering, or tax evasion, he did not "fit into the class of persons for whom the statute was principally designed." *Id.* at 2038. The Court noted that the maximum fine of $5000 under the Sentencing Guidelines, while the statutory maximum fine was $250,000, "confirm[ed] a minimal level of culpability." *Id.* & n.14. Furthermore, the Court stated that the harm caused by the defendant's violation was minimal, asserting that only the government was affected, "and in a relatively minor way," by the failure to report the currency. *Id.* at 2039.

After *Bajakajian*, the Eleventh Circuit has attempted to "translat[e] the gravity of a crime into monetary terms." *United States v. 817 N.E. 29th Drive*, 175 F.3d 1304, 1309 (11th Cir.

1999).  Noting the Supreme Court's consideration in *Bajakajian* giving deference to judgments of the legislature on punishment, the Eleventh Circuit stated that "if the value of the forfeited property is within the range of fines prescribed by Congress, a strong presumption arises that the forfeiture is constitutional." *Id.*  The court went on to say that "if the value of the property forfeited is within or near the permissible range of fines under the sentencing guidelines, the forfeiture almost certainly is not excessive."  *Id.* at 1310.  The district court referred to these Eleventh Circuit statements at the bench trial on forfeiture of Wallace's airplane.

### III. *Proportionality of Wallace's Airplane Forfeiture*

In contrast to the situation in *Bajakajian*, as the district court determined – and Wallace does not contest – there is no applicable or analogous Sentencing Guideline for Wallace's unlawful operation of an unregistered airplane.  Therefore the only current legislative guidance as to the gravity of Wallace's offense in monetary terms is the statutory maximum fine of $250,000.[2] Forfeiture of the $30,000 airplane is certainly not grossly disproportionate as compared to this $250,000 statutory maximum.

---

[2] 49 U.S.C. § 46306(b) states that a violator "shall be fined under title 18, imprisoned for not more than 3 years, or both."  49 U.S.C. § 46306(b).  18 U.S.C. § 3571 sets a maximum fine of $250,000 for any felony, unless a specific statute prescribes otherwise (by specific reference to § 3571).  18 U.S.C. § 3571(b)(3) & (e).  The aircraft registration violation of 49 U.S.C. § 46306(b) is a Class E felony under 18 U.S.C. § 3559 because a prison term of up to three years is specified.  18 U.S.C. § 3559(a).

It may seem that comparison of Wallace's airplane value to the $250,000 statutory maximum is harsh in this case, since the $250,000 maximum fine is a default provision for any felony rather than a fine specifically provided by the statute defining Wallace's offense. *See* note 2, *supra*. Until 1994, the maximum fine under the predecessor to 49 U.S.C. § 46306(b) was $15,000. 49 U.S.C. app. § 1472(b)(2)(A) (repealed 1994). The 1994 amendment changed the maximum fine language to read "fined under title 18" for the stated purpose of "consistency with title 18." 49 U.S.C. § 46306 Historical and Statutory notes (citing H.R. Rep. 103-180 (1993)). There is no indication in the legislative history of the 1994 amendment that a substantial increase in the resulting fines was intended. It may be, for example, that Congress referenced the default fine provision in order to make the statute compatible with future treatment under the Sentencing Guidelines.[3]

Even if the original $15,000 statutory maximum fine under the predecessor statute is used for guidance, however, forfeiture of Wallace's airplane is not grossly disproportionate. The $30,000 value of the airplane differs from this maximum by only a factor of

---

[3]The Sentencing Commission initially made clear that it could not "comprehensively treat all regulatory violations in the initial set of guidelines," but planned to "address the less common regulatory offenses in the future." U.S. SENTENCING GUIDELINES MANUAL ch. 1, pt. A. sec. 4(f) (1987), *reprinted in* U.S. SENTENCING GUIDELINES MANUAL § 1A1.1 editorial note (2003). The statement that less common offenses would be addressed in the future was removed in a 1990 amendment, however. *See* U.S. SENTENCING GUIDELINES MANUAL § 1A1.1 editorial note (2003).

two.[4]  In *Bajakajian*, by contrast, the $357,000 forfeiture sought by the government was over seventy times the maximum fine of $5000 under the Sentencing Guidelines.  Finding the forfeiture of Wallace's airplane to be excessive would require imposing the kind of strict proportionality that the Supreme Court expressly disavowed in *Bajakajian*.  *Bajakajian*, 118 S.Ct. at 2037.

Not only is the value of the forfeiture in the instant case smaller than that at issue in *Bajakajian*, but we believe the gravity of the offense is greater.  The offense in *Bajakajian* was a one-time transportation of currency out of the United States without declaring it.  In the instant case, by contrast, Wallace owned the airplane for some seven years without registering it before it was seized by the government.  He argues in his brief that "[t]he function of the airplane was a source of transportation and joy to Wallace," that "[t]he function that it [the airplane] performed was that it was Wallace's means of transportation and it was his sole tangible property of any value that provided him his joy in life.  Flying is Wallace's life," and that "[a]ll he has done with it is fly around the State of Arkansas and to Florida with it for a vacation.[5]  Wallace has been flying safely for

---

[4]Wallace contended before sentencing that the airplane was worth $53,000, and provided supporting documentation to the probation officer.  Wallace's appellate brief uses the $30,000 figure, however.  Even if the airplane is valued at $53,000, our conclusion that the forfeiture is not prohibited by the Excessive Fines Clause remains the same.

[5]  Indeed, the evidence shows Wallace flew the plane from Louisiana to Florida on May 26, 2001, and from Florida to Louisiana on May 28, 2001.

years." Obviously, he was operating an unregistered airplane on an ongoing basis, as opposed to the one-time violation in *Bajakajian*. Wallace does not argue that his failure to register the airplane was any sort of mere spur of the moment lapse in judgment or misplaced desire to avoid some bureaucratic delay on a single occasion (much less that there was any true inadvertence). In fact, Wallace testified that he had owned four other airplanes and had registered all of them. Furthermore, the fact that the most recent registration certificate on file for the airplane was with the Arkansas Forestry Commission increased the damage to the integrity of federal aviation safety and security systems caused by Wallace's operation of an unregistered plane. As noted in a federal agent's affidavit submitted by the government, airplanes registered to natural resource agencies are able to engage in low-level flight, below radar coverage, without attracting a law enforcement response, since such agencies are known to conduct low-level flights for research and survey purposes.

Wallace argues that he is similar to the defendant in *Bajakajian* in that he is not the type of offender (namely, a drug trafficker) at whom the aircraft registration statute is targeted. It is true that the 1988 introduction of criminal penalties and the forfeiture provision appears to have been motivated by drug enforcement concerns. *See* 134 Cong. Rec. 22,632 (1988). However, Congress clearly intended that forfeiture apply for violations not

9

involving drug trafficking, as well.  The forfeiture provision was described in House debate as "giv[ing] law enforcement agencies the authority to seize aircraft when there are violations of the new criminal provisions whether controlled substances are involved or not."  *Id.*  That drug traffickers are not the only target of the statute Wallace was charged under is further evidenced by the existence of a separate subsection of the statute providing a longer maximum prison term when controlled substances are involved. 49 U.S.C. § 46306(c)(2).

Wallace further invokes other factors that courts have gleaned from *Bajakajian*, such as related illegal activities and the benefit reaped by the claimant contesting the forfeiture.  See *United States v. Lot Numbered One of Lavaland Annex*, 256 F.3d 949, 958 (10th Cir. 2001); *United States v. 3814 NW Thurman Street*, 164 F.3d 1191, 1197-98 (9th Cir. 1999).  Even to the extent that some of these factors may suggest a relatively low gravity for Wallace's offense, this does not make forfeiture of his airplane excessive. A lower offense gravity would suggest comparison of the forfeiture value to a fine level lower than the statutory maximum, as was done in *Bajakajian* by considering the Sentencing Guidelines' maximum fine.  *Bajakajian*, 118 S.Ct. at 2038-39.  But even when we compare Wallace's forfeiture to a reduced fine level such as the $15,000 maximum fine for the predecessor statute, the amount of the forfeiture is simply not grossly disproportional.

10

## Conclusion

The forfeiture of Wallace's airplane is not grossly disproportional to the gravity of his offense. Therefore, the forfeiture is not in violation of the Excessive Fines Clause, and the district court's judgment is accordingly

AFFIRMED.

11