

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00252-CV

ONE (1) 1998 BLUE CHEVROLET        APPELLANT
CAMARO

V.

THE STATE OF TEXAS        STATE

----------

## FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Brandon Wayne Ball appeals from the trial court's order of forfeiture of his $6,745 replevy bond in lieu of his 1998 blue Chevrolet Camaro. In two issues, Ball argues that the trial court erred by concluding that the Camaro was contraband and that the trial court's judgment violates the Excessive Fines Clause of the Eighth Amendment of the United States Constitution. Because we

---

[1]*See* Tex. R. App. P. 47.4.

hold that the evidence was sufficient to show that the vehicle was contraband and that the forfeiture was not an excessive fine, we affirm.

On September 8, 2009, Corinth Police Officer Russ Ebsen arrested Ball for evading arrest or detention using a vehicle.[2]  On October 1, 2009, the State of Texas filed a petition for forfeiture of the Chevrolet Camaro owned by Ball, which Ball had been driving at the time of his arrest.  The State alleged that the vehicle was contraband under article 59.01 of the Texas Code of Criminal Procedure[3] and asked the trial court to order the vehicle forfeited to the State.  To obtain the return of his vehicle pending trial, Ball and his attorney (as surety) made a replevy bond in the amount of $6,745.

The criminal case against Ball was resolved while the forfeiture proceeding was still pending.  Under a plea bargain agreement, Ball pled guilty to the lesser included offense of misdemeanor evading arrest, received deferred adjudication community supervision for two years, and was ordered to pay a fine of $500.

At the trial in the forfeiture proceeding, Ebsen testified that while on duty on the night of September 8, 2009, he received a call from dispatch about a reckless driver.  Dispatch reported that two vehicles—a blue Camaro and a silver Mustang—might be racing.  At the time, Ebsen was parked on the shoulder on northbound I-35E.  After receiving the call from dispatch, Ebsen saw a blue

---

[2]See Tex. Penal Code Ann. § 38.04(a), (b)(1)(B) (West 2011).

[3]See Tex. Code Crim. Proc. Ann. art. 59.01 (West Supp. 2010).

2

Camaro approaching at a high rate of speed. Using his radar, Ebsen determined that the vehicle was driving at 108 miles per hour, well above the posted speed limit of sixty miles per hour. After the Camaro passed him, Ebsen put his car in drive, turned on his headlights, and entered the flow of traffic to catch up to the Camaro. Ebsen then saw the Camaro change lanes and take the Corinth Parkway exit off of the freeway.

Ebsen testified that he saw the Camaro run the red light at the intersection of Corinth Parkway and turn left onto the Parkway. Ebsen turned on his emergency lights and his siren. The Camaro continued driving at a high speed and turned onto a residential street. The Camaro then turned onto another residential street, a dead-end, and came to a stop. Ebsen stated that he arrested Ball for evading arrest or detention with a motor vehicle and that after being given the warnings required by *Miranda v. Arizona*,[4] Ball answered affirmatively when asked if he had taken the exit off the freeway in an attempt to get away from the officer.

Ball testified that he knew that he was speeding but did not flee from Ebsen. He further testified that he had seen a car on the side of the road but did not know it was a police car, although he "assumed it could have been." He then stated that he knew that he was driving at a high rate of speed, and so he took the exit "so that maybe [he] could avoid getting a speeding ticket." He

---

[4]*See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

acknowledged that he took the exit to avoid detection from the officer and that he made a left turn onto Corinth Parkway to get away from the officer. Ball also filed a trial brief in which he asserted that the vehicle had been stolen and was no longer in his possession.

At the conclusion of the hearing, the trial court found that Ball did try to evade arrest and that because the vehicle had not been returned, the bond should be forfeited. The trial court signed a judgment of forfeiture, finding that Ball had failed to return the Camaro to the custody of the State and that the vehicle was contraband and subject to forfeiture under chapter 59 of the code of criminal procedure. The trial court ordered Ball or Ball's attorney to pay to the State $6,745 within thirty-one days "for their failure to adhere to the terms and conditions of the replevy bond in this matter." Ball then filed this appeal.

In his first issue, Ball asserts that the trial court made an erroneous conclusion of law when it found that the Camaro was "contraband" as defined by chapter 59 of the code of criminal procedure. His argument, however focuses on whether the State proved by a preponderance of the evidence that the Camaro was contraband, and he argues that the State produced no more than a surmise or suspicion that Ball knew that he was fleeing from a peace officer and that the peace officer was trying to lawfully arrest or detain him. Thus, Ball's actual issue

4

appears to be that the evidence was legally insufficient to support the trial court's findings.[5]  Accordingly, we will review the evidence for legal sufficiency.

The code of criminal procedure makes contraband subject to forfeiture.[6]  The code defines "contraband" to include property that is used in the commission of a felony under penal code section 38.04.[7]  Section 38.04 provides that a person commits an offense if the person "intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him," and that offense is a felony if the actor uses a vehicle while the actor is in flight.[8]  Thus, if Ball used his vehicle while in flight from a person he knew was a police officer attempting lawfully to arrest or detain him, then his vehicle constituted contraband and became subject to forfeiture.  The State had the burden to show

---

[5]*See Regal Fin. Co., Ltd. v. Tex Star Motors, Inc.*, No. 08-0148, 2010 WL 3277132, at *7 (Tex. Aug. 20, 2010) (stating that evidence that does nothing more than create a surmise or suspicion that a fact exists is not legally sufficient); *see also* Tex. Code Crim. Proc. Ann. art 59.05(e) (West 2006) ("If the [trial] court *finds* that all or any part of the property is subject to forfeiture, the judge shall forfeit the property to the state.") (emphasis added).

[6]Tex. Code Crim. Proc. Ann. art. 59.02(a) (West Supp. 2010).

[7]*Id.* art. 59.01(2)(A)(ii).

[8]Tex. Penal Code Ann. § 38.04(a), (b)(1)(B), (b)(2)(A) (providing that the offense is a state jail felony if the actor has not been previously convicted under that section and a third degree felony if the actor has been previously convicted under that section).

by a preponderance of the evidence that the Camaro was contraband.[9] The forfeiture statute does not require a final conviction on the underlying offense.[10]

As stated above, Ball testified at the forfeiture hearing that he knew he was speeding and that he thought the car on the side of the road could have been a police officer. He further testified that he took the exit off of the freeway "so that maybe [he] could avoid getting a speeding ticket." He also acknowledged that he made a left turn onto Corinth Parkway to get away from the officer. The trial court also admitted into evidence the video showing the stop from Ebsen's in-car dash camera, in which Ball told the officer that he took the Corinth Parkway exit because "I thought you had me," and in which Ball acknowledged after being *Mirandized* that he had attempted to get away from the officer and had taken the Corinth Parkway exit and turned into the neighborhood to avoid being stopped. Thus, the State provided some evidence, and therefore legally sufficient evidence, to show that the vehicle was contraband.[11] We overrule Ball's first issue.

---

[9]*See $43,774.00 U.S. Currency v. State*, 266 S.W.3d 178, 182 (Tex. App.—Texarkana 2008, pet. denied) ("The statute places on the State the burden of proving, by a preponderance of the evidence, that the item being forfeited is subject to forfeiture.").

[10]Tex. Code Crim. Proc. Ann. art. 59.05(d).

[11]*See City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005) (setting out the standard of review for legal sufficiency).

In Ball's second issue, he argues that the trial court's judgment violates the Excessive Fines Clause of the Eighth Amendment of the United States Constitution because the value of the property seized ($6,745) is more than thirteen times the fine imposed ($500). The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.'"[12] Traditional civil forfeitures are in rem proceedings and are not intended to be punishment. The forfeitures are not considered fines and thus are not subject to the Eighth Amendment's prohibition against excessive fines.[13]

But many modern forfeiture proceedings are intended to be punitive, and if a forfeiture constitutes punishment for an offense, the forfeiture is a "fine" and therefore subject to the Eighth Amendment.[14] The United States Supreme Court has held that a forfeiture is unconstitutional as a violation of the Excessive Fines Clause if the amount of the forfeiture "is grossly disproportional to the gravity of

---

[12]*Austin v. United States*, 509 U.S. 602, 609–10, 113 S. Ct. 2801, 2805, (1993).

[13]*United States v. Bajakajian*, 524 U.S. 321, 331, 118 S. Ct. 2028, 2035, (1998).

[14]*Id.* at 322, 327–28, 118 S. Ct. at 2033, 2035 (stating that the forfeiture provision in that case was punitive in that "[t]he forfeiture serves no remedial purpose, is designed to punish the offender, and cannot be imposed upon innocent owners"); *see also Austin*, 509 U.S. at 617, 113 S. Ct. at 2809 (noting that including an innocent owner defense in a forfeiture provision indicates that the statute is punitive; Tex. Code Crim. Proc. Ann. art. 59.02(e) (providing a defense to forfeiture for innocent owners).

7

the defendant's offense."[15]   That court did not set out specific factors to consider in determining whether a fine is grossly disproportionate.  But in deciding that the fine was grossly disproportionate in that case, it considered such factors as the nature of the crime (in that case, solely a reporting offense), whether the defendant fit into the class of persons for whom the statute was principally designed, whether the defendant's offense was related to other illegal activities, the maximum sentence and fine that could be assessed for the offense and how much culpability the penalties reflect, and the harm that the defendant caused.[16] No single test has become a standard in making the "grossly disproportionate" determination,[17] but the Texas courts that have considered this issue have applied these same factors.[18]   We conduct a de novo review to determine whether the forfeiture is grossly disproportionate.[19]

---

[15]*Bajakajian*, 524 U.S. at 337, 118 S. Ct. at 2038.

[16]*Id.* at 337–39, 118 S. Ct. at 2038; *see also 1992 BMW Vin WBABF4313NEK00963/Brandon Lee Thompson v. State*, No. 04-07-00116-CV, 2007 WL 2608364, at *1 (Tex. App.—San Antonio Sept. 12, 2007, no pet.) (mem. op.) (applying *Bajakajian* to determine whether a forfeiture was grossly disproportional and considering "(1) the nature of the offense; (2) the relationship of the offense to other illegal activities; (3) whether a defendant was one of the class of persons addressed by the forfeiture statute; (4) the maximum sentence and fine recommended or permitted for the offense; and (5) the harm caused by the offense").

[17]*Com. v. Real Prop. & Improvements Commonly Known As 5444 Spruce St., Phila.*, 832 A.2d 396, 403 n.7 (Pa. 2003) (comparing the differing approaches across jurisdictions).

[18]*See 1992 BMW*, 2007 WL 2608364, at *1; *Vasquez v. State*, 01-04-01221-CV, 2006 WL 2506965, at *6 (Tex. App.—Houston [1st Dist.] Aug. 31,

8

Assuming without deciding that article 59.02's forfeiture provision is punitive and is therefore a fine subject to the Eighth Amendment, the fine was not prohibitively excessive. Ball is one of the class of persons addressed by article 59.02—persons who commit certain specified felonies, in this case, evading arrest or detention with a vehicle. The offense in this case is a state jail felony, and the permissible fine for the offense of $10,000, with a possible sentence of confinement of up to two years,[20] reflects the legislature's determination that the offense is a serious one. The State ultimately entered into a plea bargain with Ball under which he was sentenced for the misdemeanor offense rather than the state jail felony, which is some evidence that the State may have considered Ball to be less culpable than other violators of section 38.04. But unlike in *Bajakajian*, Ball's offense was more serious than just a failure to report information, and a Class A misdemeanor offense (to which Ball pled guilty) is still eligible for punishment of confinement up to a year and a fine of up to $4,000.[21] And

---

2006, pet. denied) (mem. op.) (considering substantially the same factors); *One Car, 1996 Dodge X-Cab Truck White in Color 5YC-T17 VIN 3B7HC13Z5TG163723 v. State*, 122 S.W.3d 422, 425 (Tex. App.—Beaumont 2003, no pet.) (appearing to apply the same *Bajakajian* factors); *see also United States v. $64,000 in Money Orders & Cashiers Check*, CIV. A. H-07-3691, 2009 WL 2970504, at *1 (S.D. Tex. Sept. 9, 2009).

[19]*Bajakajian*, 524 U.S. at 336–37, 118 S. Ct. at 2037–38; *One Car*, 122 S.W.3d at 427.

[20]Tex. Penal Code Ann. § 12.35 (West 2011).

[21]*See* Tex. Penal Code Ann. § 12.21 (West 2011).

importantly, the amount being forfeited is less than twice the fine that Ball could have received for his misdemeanor conviction and is less than the $10,000 fine that could have been assessed against Ball upon conviction of the felony offense.[22]  Considering the circumstances of the case, we cannot say that the forfeiture was grossly disproportionate to the gravity of Ball's offense.  We overrule Ball's second issue.

Having overruled both of Ball's issues, we affirm the trial court's judgment.

LEE ANN DAUPHINOT<br>
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT, J.; and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by Assignment).

DELIVERED:  August 4, 2011

---

[22]*See $27,877.00 Current Money of U.S. v. State*, 331 S.W.3d 110, 122 (Tex. App.—Fort Worth 2010, pet. filed) (assuming without deciding that civil forfeiture of drug proceeds is subject to the Excessive Fines clause and holding that forfeiture of an amount 2.3 times the maximum fine was not excessive); *see also U.S. v. Wallace*, 389 F.3d 483, 486 (5th Cir. 2004) (upholding forfeiture of $30,000 airplane when the statutory maximum fine for failure to register the airplane was $15,000).