02-10-252-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00252-CV

 

 


 
 
 One (1) 1998 Blue Chevrolet Camaro
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 393rd
District Court OF Denton COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Appellant
Brandon Wayne Ball appeals from the trial court’s order of forfeiture of his
$6,745 replevy bond in lieu of his 1998 blue Chevrolet Camaro.  In two issues,
Ball argues that the trial court erred by concluding that the Camaro was
contraband and that the trial court’s judgment violates the Excessive Fines
Clause of the Eighth Amendment of the United States Constitution.  Because we
hold that the evidence was sufficient to show that the vehicle was contraband
and that the forfeiture was not an excessive fine, we affirm.

On
September 8, 2009, Corinth Police Officer Russ Ebsen arrested Ball for evading
arrest or detention using a vehicle.[2]  On October 1, 2009, the
State of Texas filed a petition for forfeiture of the Chevrolet Camaro owned by
Ball, which Ball had been driving at the time of his arrest.  The State alleged
that the vehicle was contraband under article 59.01 of the Texas Code of
Criminal Procedure[3] and asked the trial court
to order the vehicle forfeited to the State.  To obtain the return of his
vehicle pending trial, Ball and his attorney (as surety) made a replevy bond in
the amount of $6,745.

The
criminal case against Ball was resolved while the forfeiture proceeding was
still pending.  Under a plea bargain agreement, Ball pled guilty to the lesser
included offense of misdemeanor evading arrest, received deferred adjudication
community supervision for two years, and was ordered to pay a fine of $500.

At
the trial in the forfeiture proceeding, Ebsen testified that while on duty on
the night of September 8, 2009, he received a call from dispatch about a
reckless driver.  Dispatch reported that two vehicles—a blue Camaro and a
silver Mustang—might be racing.  At the time, Ebsen was parked on the shoulder
on northbound I-35E.  After receiving the call from dispatch, Ebsen saw a blue
Camaro approaching at a high rate of speed.  Using his radar, Ebsen determined
that the vehicle was driving at 108 miles per hour, well above the posted speed
limit of sixty miles per hour.  After the Camaro passed him, Ebsen put his car
in drive, turned on his headlights, and entered the flow of traffic to catch up
to the Camaro.  Ebsen then saw the Camaro change lanes and take the Corinth Parkway
exit off of the freeway.

Ebsen
testified that he saw the Camaro run the red light at the intersection of
Corinth Parkway and turn left onto the Parkway.  Ebsen turned on his emergency
lights and his siren.  The Camaro continued driving at a high speed and turned
onto a residential street.  The Camaro then turned onto another residential
street, a dead-end, and came to a stop.  Ebsen stated that he arrested Ball for
evading arrest or detention with a motor vehicle and that after being given the
warnings required by Miranda v. Arizona,[4] Ball answered
affirmatively when asked if he had taken the exit off the freeway in an attempt
to get away from the officer.

Ball
testified that he knew that he was speeding but did not flee from Ebsen.  He
further testified that he had seen a car on the side of the road but did not
know it was a police car, although he “assumed it could have been.”  He then
stated that he knew that he was driving at a high rate of speed, and so he took
the exit “so that maybe [he] could avoid getting a speeding ticket.”  He
acknowledged that he took the exit to avoid detection from the officer and that
he made a left turn onto Corinth Parkway to get away from the officer.  Ball
also filed a trial brief in which he asserted that the vehicle had been stolen
and was no longer in his possession.

At
the conclusion of the hearing, the trial court found that Ball did try to evade
arrest and that because the vehicle had not been returned, the bond should be
forfeited.  The trial court signed a judgment of forfeiture, finding that Ball
had failed to return the Camaro to the custody of the State and that the
vehicle was contraband and subject to forfeiture under chapter 59 of the code
of criminal procedure.  The trial court ordered Ball or Ball’s attorney to pay
to the State $6,745 within thirty-one days “for their failure to adhere to the
terms and conditions of the replevy bond in this matter.”  Ball then filed this
appeal.

In
his first issue, Ball asserts that the trial court made an erroneous conclusion
of law when it found that the Camaro was “contraband” as defined by chapter 59
of the code of criminal procedure.  His argument, however focuses on whether
the State proved by a preponderance of the evidence that the Camaro was
contraband, and he argues that the State produced no more than a surmise or
suspicion that Ball knew that he was fleeing from a peace officer and that the
peace officer was trying to lawfully arrest or detain him.  Thus, Ball’s actual
issue appears to be that the evidence was legally insufficient to support the
trial court’s findings.[5]  Accordingly, we will review
the evidence for legal sufficiency.

The
code of criminal procedure makes contraband subject to forfeiture.[6] 
The code defines “contraband” to include property that is used in the
commission of a felony under penal code section 38.04.[7] 
Section 38.04 provides that a person commits an offense if the person
“intentionally flees from a person he knows is a peace officer attempting
lawfully to arrest or detain him,” and that offense is a felony if the actor
uses a vehicle while the actor is in flight.[8]  Thus, if Ball used his
vehicle while in flight from a person he knew was a police officer attempting
lawfully to arrest or detain him, then his vehicle constituted contraband and became
subject to forfeiture.  The State had the burden to show by a preponderance of
the evidence that the Camaro was contraband.[9]  The forfeiture statute
does not require a final conviction on the underlying offense.[10]

As
stated above, Ball testified at the forfeiture hearing that he knew he was
speeding and that he thought the car on the side of the road could have been a
police officer.  He further testified that he took the exit off of the freeway “so
that maybe [he] could avoid getting a speeding ticket.”  He also acknowledged
that he made a left turn onto Corinth Parkway to get away from the officer.  The
trial court also admitted into evidence the video showing the stop from Ebsen’s
in-car dash camera, in which Ball told the officer that he took the Corinth
Parkway exit because “I thought you had me,” and in which Ball acknowledged after
being Mirandized that he had attempted to get away from the officer and
had taken the Corinth Parkway exit and turned into the neighborhood to avoid
being stopped.  Thus, the State provided some evidence, and therefore legally sufficient
evidence, to show that the vehicle was contraband.[11] 
We overrule Ball’s first issue.

In
Ball’s second issue, he argues that the trial court’s judgment violates the
Excessive Fines Clause of the Eighth Amendment of the United States
Constitution because the value of the property seized ($6,745) is more than
thirteen times the fine imposed ($500).  The Excessive Fines Clause “limits the
government’s power to extract payments, whether in cash or in kind, ‘as punishment
for some offense.’”[12]  Traditional civil
forfeitures are in rem proceedings and are not intended to be punishment.  The
forfeitures are not considered fines and thus are not subject to the Eighth
Amendment’s prohibition against excessive fines.[13]

But many
modern forfeiture proceedings are intended to be punitive, and if a forfeiture
constitutes punishment for an offense, the forfeiture is a “fine” and therefore
subject to the Eighth Amendment.[14]  The United States
Supreme Court has held that a forfeiture is unconstitutional as a violation of
the Excessive Fines Clause if the amount of the forfeiture “is grossly
disproportional to the gravity of the defendant’s offense.”[15] 
That court did not set out specific factors to consider in determining whether
a fine is grossly disproportionate.  But in deciding that the fine was grossly
disproportionate in that case, it considered such factors as the nature of the
crime (in that case, solely a reporting offense), whether the defendant fit
into the class of persons for whom the statute was principally designed,
whether the defendant’s offense was related to other illegal activities, the
maximum sentence and fine that could be assessed for the offense and how much
culpability the penalties reflect, and the harm that the defendant caused.[16] 
No single test has become a standard in making the “grossly disproportionate”
determination,[17] but the Texas courts
that have considered this issue have applied these same factors.[18] 
We conduct a de novo review to determine whether the forfeiture is grossly
disproportionate.[19]

Assuming
without deciding that article 59.02’s forfeiture provision is punitive and is
therefore a fine subject to the Eighth Amendment, the fine was not
prohibitively excessive.  Ball is one of the class of persons addressed by
article 59.02—persons who commit certain specified felonies, in this case,
evading arrest or detention with a vehicle.  The offense in this case is a
state jail felony, and the permissible fine for the offense of $10,000, with a
possible sentence of confinement of up to two years,[20]
reflects the legislature’s determination that the offense is a serious one.  The
State ultimately entered into a plea bargain with Ball under which he was
sentenced for the misdemeanor offense rather than the state jail felony, which
is some evidence that the State may have considered Ball to be less culpable
than other violators of section 38.04.  But unlike in Bajakajian, Ball’s
offense was more serious than just a failure to report information, and a Class
A misdemeanor offense (to which Ball pled guilty) is still eligible for
punishment of confinement up to a year and a fine of up to $4,000.[21] 
And importantly, the amount being forfeited is less than twice the fine that
Ball could have received for his misdemeanor conviction and is less than the $10,000
fine that could have been assessed against Ball upon conviction of the felony offense.[22] 
Considering the circumstances of the case, we cannot say that the forfeiture
was grossly disproportionate to the gravity of Ball’s offense.  We overrule
Ball’s second issue.

Having
overruled both of Ball’s issues, we affirm the trial court’s judgment.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT, J.; and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by
Assignment).

 

DELIVERED:  August 4, 2011









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code
Ann. § 38.04(a), (b)(1)(B) (West 2011).





[3]See Tex. Code Crim.
Proc. Ann. art. 59.01 (West Supp. 2010).





[4]See Miranda v. Arizona,
384 U.S. 436, 86 S. Ct. 1602 (1966).





[5]See Regal Fin. Co.,
Ltd. v. Tex Star Motors, Inc., No. 08-0148, 2010 WL 3277132, at *7 (Tex.
Aug. 20, 2010) (stating that evidence that does nothing more than create a
surmise or suspicion that a fact exists is not legally sufficient); see also
Tex. Code Crim. Proc. Ann. art 59.05(e) (West 2006) (“If the [trial] court finds
that all or any part of the property is subject to forfeiture, the judge shall
forfeit the property to the state.”) (emphasis added).





[6]Tex. Code Crim. Proc. Ann.
art. 59.02(a) (West Supp. 2010).





[7]Id. art.
59.01(2)(A)(ii).





[8]Tex. Penal Code Ann. §
38.04(a), (b)(1)(B), (b)(2)(A) (providing that the offense is a state jail
felony if the actor has not been previously convicted under that section and a
third degree felony if the actor has been previously convicted under that
section).





[9]See $43,774.00 U.S.
Currency v. State, 266 S.W.3d 178, 182 (Tex. App.—Texarkana 2008, pet.
denied) (“The statute places on the State the burden of proving, by a
preponderance of the evidence, that the item being forfeited is subject to
forfeiture.”).





[10]Tex. Code Crim. Proc.
Ann. art. 59.05(d).





[11]See City of Keller v.
Wilson, 168 S.W.3d 802, 810 (Tex. 2005) (setting out the standard of review
for legal sufficiency).





[12]Austin v. United
States, 509 U.S. 602, 609–10, 113 S. Ct. 2801, 2805, (1993).





[13]United States v. Bajakajian,
524 U.S. 321, 331, 118 S. Ct. 2028, 2035, (1998).





[14]Id. at 322, 327–28,
118 S. Ct. at 2033, 2035 (stating that the forfeiture provision in that case
was punitive in that “[t]he forfeiture serves no remedial purpose, is designed
to punish the offender, and cannot be imposed upon innocent owners”); see
also Austin, 509 U.S. at 617, 113 S. Ct. at 2809 (noting that
including an innocent owner defense in a forfeiture provision indicates that
the statute is punitive); Tex. Code Crim. Proc. Ann. art. 59.02(e) (providing a
defense to forfeiture for innocent owners).





[15]Bajakajian, 524 U.S.
at 337, 118 S. Ct. at 2038.





[16]Id. at 337–39, 118
S. Ct. at 2038; see also 1992 BMW Vin WBABF4313NEK00963/Brandon Lee
Thompson v. State, No. 04-07-00116-CV, 2007 WL 2608364, at *1 (Tex.
App.—San Antonio Sept. 12, 2007, no pet.) (mem. op.) (applying Bajakajian
to determine whether a forfeiture was grossly disproportional and considering
“(1) the nature of the offense; (2) the relationship of the offense to other
illegal activities; (3) whether a defendant was one of the class of persons
addressed by the forfeiture statute; (4) the maximum sentence and fine
recommended or permitted for the offense; and (5) the harm caused by the
offense”).





[17]Com. v. Real Prop.
& Improvements Commonly Known As 5444 Spruce St., Phila., 832 A.2d 396,
403 n.7 (Pa. 2003) (comparing the differing approaches across jurisdictions).





[18]See 1992 BMW, 2007
WL 2608364, at *1; Vasquez v. State, 01-04-01221-CV, 2006 WL 2506965, at
*6 (Tex. App.—Houston [1st Dist.] Aug. 31, 2006, pet. denied) (mem. op.)
(considering substantially the same factors); One Car, 1996 Dodge X-Cab
Truck White in Color 5YC-T17 VIN 3B7HC13Z5TG163723 v. State, 122 S.W.3d
422, 425 (Tex. App.—Beaumont 2003, no pet.) (appearing to apply the same Bajakajian
factors); see also United States v. $64,000 in Money Orders & Cashiers
Check, CIV. A. H-07-3691, 2009 WL 2970504, at *1 (S.D. Tex. Sept. 9, 2009).





[19]Bajakajian, 524
U.S. at 336–37, 118 S. Ct. at 2037–38; One Car, 122 S.W.3d at 427.





[20]Tex. Penal Code Ann. §
12.35 (West 2011).





[21]See Tex. Penal
Code Ann. § 12.21 (West 2011).





[22]See $27,877.00 Current
Money of U.S. v. State, 331 S.W.3d 110, 122 (Tex. App.—Fort Worth 2010,
pet. filed) (assuming without deciding that civil forfeiture of drug proceeds
is subject to the Excessive Fines clause and holding that forfeiture of an
amount 2.3 times the maximum fine was not excessive); see also U.S. v.
Wallace, 389 F.3d 483, 486 (5th Cir. 2004) (upholding forfeiture of $30,000
airplane when the statutory maximum fine for failure to register the airplane
was $15,000).