

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00057-CV

_____

2007 INFINITI G35X MOTOR VEHICLE, VIN JNKBV61E17M708556, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 11-0038

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

After twice fleeing police in his 2007 Infiniti G35X automobile while his driver's license was suspended, Royce Wayne Young's interest in the vehicle was forfeited as contraband. On appeal, Young claims that the forfeiture is constitutionally excessive. Because we disagree, we affirm the trial court's judgment.

Chapter 59 of the Texas Code of Criminal Procedure authorizes the forfeiture of contraband, which is defined as property used in the commission of various enumerated offenses, including felony evasion of arrest or detention with a vehicle under Section 38.04 of the Texas Penal Code. TEX. CODE CRIM. PROC. ANN. arts. 59.01(2)(A)(ii), 59.02(a) (West Supp. 2013). However, the Excessive Fines Clause of the Eighth Amendment to the United States Constitution "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" *Austin v. United States*, 509 U.S. 602, 609–10 (1993).

Here, the parties do not dispute either that the vehicle is contraband as defined by Article 59.01(2)(A)(ii) of the Texas Code of Criminal Procedure or that there is a substantial nexus or connection between the car and the evasion. *See One Car*, *1996 Dodge X-Cab Truck White in Color 5YC-T17 VIN 3B7HC13Z5TG163723 v. State*, 122 S.W.3d 422, 424 (Tex. App.—Beaumont 2003, no pet.). Therefore, the only issue for this Court to address is whether the forfeiture is grossly disproportionate under the *Bajakajian* proportionality test. *See United States v. Bajakajian*, 524 U.S. 321, 334 (1998).[1] We conduct that review de novo. *Id.* at 336–37.

---

[1]Traditional civil forfeitures, *in rem* proceedings, are not considered punishment or fines and thus are not subject to the Eighth Amendment's prohibition against excessive fines. *Bajakajian*, 524 U.S. at 331. Article 59.05(e) of the Texas Code of Criminal Procedure states, "[I]t is the intention of the legislature that asset forfeiture is remedial in

2

A forfeiture is unconstitutional under the Excessive Fines Clause if the amount of the forfeiture "is grossly disproportional to the gravity of the defendant's offense." *Id.* at 337. *Bajakajian* pertained to a forfeiture of currency under a federal statute making it a crime to carry more than $10,000.00 in currency out of the country without reporting it. *Id.* at 321. Bajakajian pled guilty to failing to report the funds as he attempted to leave the country. *Id.* The government sought forfeiture of the entire amount of cash carried by Bajakajian, $357,144.00, despite the evidence establishing that he was the lawful owner of the funds and that they were unrelated to any other criminal activity. *Id.* The district court ruled that, under the statute, the entire sum was subject to forfeiture, but declined to enter such a judgment, holding that such a result would violate the Excessive Fines Clause. The Ninth Circuit affirmed. *Id.* at 326–27.

The United States Supreme Court held that the lower courts should determine the proportionality of the forfeiture, i.e., the amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish. *Id*. at 334. In determining whether the forfeiture of the entire sum was "excessive" or "grossly disproportional," the Court examined the nature of the offense, a reporting violation, the relationship of the offense to other illegal activities, none, the class of offenders addressed by the federal forfeiture statute, tax evaders, drug traffickers and money launderers, and the harm caused, little or none. The Court held that

---

nature and not a form of punishment." However, the United States Supreme Court has found that many modern forfeiture proceedings are indeed punitive in nature, and, if a forfeiture constitutes punishment for an offense, the forfeiture is a "fine" and therefore subject to the Eighth Amendment. *Id.* at 322, 327–28. In *Austin,* the Court noted that, including an innocent-owner defense in a forfeiture provision indicates that the statute is punitive. *Austin*, 509 U.S. at 617. Here, Articles 59.02(h) and 59.05(c) and (e) include defenses to forfeiture for an innocent owner of contraband property. Therefore, the forfeiture statutes are punitive and subject to the Eighth Amendment.

the forfeiture of the entire sum of money, $357,144.00, bore no correlation to any damages sustained by society or to the cost of enforcing the law. *Id*. at 340; *see Austin*, 509 U.S. at 621.

In *One Car*, Sondra Carroll was arrested pursuant to an outstanding warrant for possession of a controlled substance. 122 S.W.3d 422. During the inventory search of her truck, the police found a couple of short straws in the truck that contained trace amounts of methamphetamine. *Id*. at 423. Carroll pled guilty to the charge of possession of a controlled substance, a state jail felony, but received a misdemeanor sentence of ninety days in jail. *Id*. The State petitioned to forfeit the truck. *Id.* Carroll's husband testified that he paid $14,000.00 for the truck and that it was worth an estimated $11,000.00 at the time of the offense. *Id*. He knew Sondra had a drug problem, but he did not know the truck was being used to buy methamphetamine. *Id*. The trial court granted forfeiture, but, after applying *Bajakajian*, the court of appeals reversed. The court found the forfeiture to be grossly disproportionate because, even though Sondra pled guilty to a state jail felony, (1) she received a misdemeanor sentence which is inconsistent with forfeiture,[2] (2) the truck contained a barely measurable amount of methamphetamine, (3) there was no evidence that the truck was used to sell or distribute narcotics, and (4) the only other offense the vehicle was involved in that night was speeding. *Id.* at 427–28.

Even though it is an unpublished opinion, the facts of *One (1) 1998 Blue Chevrolet Camaro*, are somewhat similar to the present facts. *One (1) 1998 Blue Chevrolet Camaro v. The State of Texas*, No. 02-10-00252-CV, 2011 WL 3426263 (Tex. App.—Fort Worth Aug 4, 2011,

---

[2]The court noted that the facts would not support forfeiture even if Sondra had received a felony sentence. *One Car,* 122 S.W.3d at 427.

4

no pet.) (mem. op.). In that case, Ball appealed from the trial court's order of forfeiture of his $6,745.00 replevy bond in lieu of his 1998 blue Chevrolet Camaro. *Id.* at *1. A police officer received a call from dispatch that two cars, a blue Camaro and a silver Mustang, might be racing. *Id.* He spotted the Camaro travelling at a high rate of speed—the officer's radar reported the Camaro's speed at 108 miles per hour in a 60-mile-per-hour zone. *Id.* He saw the Camaro run a red light and continue driving at a high rate of speed. When the Camaro reached a dead end street and the chase ended, Ball was arrested for evading arrest using a vehicle. *Id.*; *see* TEX. PENAL CODE ANN. § 38.04(a), (b)(1)(B) (West Supp. 2013). The State sought to forfeit the Camaro, but Ball got his car back pending trial by putting up a replevy bond of $6,745.00. *Id.* at *2. In the intervening time, Ball pled guilty to the lesser-included offense of misdemeanor evading, received deferred adjudication community supervision for two years, and was ordered to pay a fine of $500.00. *Id.* at *1. The court of appeals upheld the forfeiture, finding that (1) Ball was one of the class of persons addressed by Article 59.02, persons who commit evading arrest or detention with a vehicle, (2) the offense was a state jail felony with a permissible fine of $10,000.00 and a possible sentence of up to two years, reflecting the Legislature's determination that the offense is a serious one, (3) the plea agreement and misdemeanor sentence constituted some evidence that the State may have considered Ball to be less culpable than other evaders, and (4) the bond was worth less than the maximum fine. *Id.* at *3.

In this case, in 2012, Young pled guilty to the offense on which this forfeiture is based, his December 2010 conviction for evading arrest with a vehicle. The trial court sentenced Young to the minimum, six months' confinement, and assessed him court costs of $294.00. A

5

forfeiture hearing was held in March 2013. Undisputed evidence established that, on September 28, 2010, Young purchased the car for $27,000.00 of inherited money, that, at the time of the hearing, the car was worth $16,500.00, and that the Marshall Police Department had custody of the car.

Betty Davis, Chief of Police for the East Mountain Police Department (EMPD), located in both Gregg County and Upshur County, Texas, testified to the slightly earlier episode in which Young attempted to evade arrest. Davis testified that, on November 24, 2010, she was a patrol officer with the EMPD and was on patrol in Upshur County. Around 7:00 p.m., she received a dispatch to watch for a car that had almost hit another vehicle at an intersection. After stopping a car that matched the report's description, the Infiniti, and verifying that the license plate number matched the reported plate, she spoke with Young, the driver. Young denied swerving at anyone and told her that other people had been swerving at him for several days. Young did not have a driver's license, but told her that Upshur County had taken his driver's license. Davis verified that Young's license was suspended at the time of the stop due to an arrest for a prior intoxication offense, eventually determined to be a driving while intoxicated, second offense, received in Upshur County on September 19, 2010, just days before Young had purchased the Infiniti. Davis added that Young said he may have a rifle in the trunk and that he had drunk two Jim Beam's earlier. Young refused to get out of the car, and when asked again, he said he did not want to go to jail. Davis returned to her patrol car to radio for backup, and when she approached Young's car again, he drove away. As Davis pursued Young, she saw him run a stop sign at a three-way stop and exceed the speed limit by ten-to-fifteen miles per hour.

6

When she caught Young's car, he had abandoned it in the middle of the road. Davis did not see Young hit anyone or injure anyone. She testified that Young "put the public in danger had there been anybody else on that road by blowing that intersection." However, she admitted that no one else was actually endangered because there was no one else on the road at that time. Young did not dispute Davis' account of the incident. Upshur County made no effort to seize the car, and the evading charge was later dismissed pursuant to a plea agreement.

William Tyler Owen, an officer for the Marshall Police Department (MPD), testified to the precipitating offense. Owen was on motorcycle patrol on December 19, 2010, in Marshall. At about 9:30 a.m., he saw the Infiniti drive by going fifty-nine miles per hour. The record does not reveal the posted speed limit. Owen stopped the car and saw that Young was the driver. Young did not have a driver's license, just a photocopy of it. When Owen asked Young to step out of the vehicle, Young "placed his vehicle in drive and sped away." In his haste to escape, Young's car struck the officer's leg and nearly drove over Owen's foot. Young avoided a traffic light by driving through a parking lot before he turned onto a city street "at a high rate of speed." On entering the city street, Young nearly collided with another car that was moving through the intersection. Owen lost sight of Young's car, even though Owen reached 115–116 miles per hour in his pursuit. He did not see Young's car again that day. On cross-examination, Owen admitted that Young never actually hit anyone else during his flight and that, other than what he testified to, he was unaware of Young endangering anyone.

Joe Alredge, a Lieutenant with the MPD, was also on patrol the morning of December 19, 2010. He saw Young's car driving on Highway 80 "at a high rate of speed" at a location a

7

couple of miles from where Owen had stopped Young earlier. With Young's car in the distance, Alredge gave chase on Highway 80; despite reaching speeds of 118–120 miles per hour, Alredge was unable to catch Young. He testified that Young was "obviously" going faster than he was. He had no knowledge of any accidents, injuries, or deaths as a result of Young's driving.

While the *Bajakajian* court did not set out specific factors to consider in determining whether a fine is grossly disproportionate, it considered (1) the nature of the offense, (2) the relationship of the offense to other illegal activities, (3) whether the defendant was in the class of persons addressed by the forfeiture statute, (4) the maximum fine and sentence for the offense committed and the level of culpability reflected by the penalties, and (5) the harm that the defendant caused. *Bajakajian*, 524 U.S. at 337–39. Texas courts considering this issue have applied the same factors. *See One Car*, 122 S.W.3d at 425; *see also 1992 BMW VIN WBABF4313NEK00963/Brandon Lee Thompson v. State*, No. 04-07-00116-CV, 2007 WL 2608364, at *1 (Tex. App.—San Antonio Sept. 12, 2007, no pet.) (mem. op.); *Vasquez v. State*, 01-04-01221-CV, 2006 WL 2506965, at *6 (Tex. App.—Houston [1st Dist.] Aug. 31, 2006, pet. denied) (mem. op.). We examine these factors.

Evading arrest in a vehicle is a nonviolent crime and one of the lowest qualifying felonies under the forfeiture statute. However, evading arrest in a vehicle creates a danger to the public. During the course of Young's flight, officers were unable to catch up to him despite reaching speeds of more than 100 miles per hour. This factor weighs in favor of forfeiture.

This evading offense was related to other offenses, as just a few weeks earlier, in Upshur County, Young successfully evaded police while driving the same car at a high rate of speed.

8

During his flight in Harrison County, Young cut through a parking lot, drove through a red light at an intersection, and then sped away. Young sped at greatly excessive speeds and otherwise drove dangerously. Young did not have an active driver's license at the time of either evasion. This factor weighs in favor of forfeiture.

Young is within the class of persons addressed by the forfeiture statute because he evaded detention in a vehicle, and he is not excluded from forfeiture by any of the chapter's innocent-owner provisions.

This offense can support a maximum sentence of two years' confinement and a maximum fine of $10,000.00. TEX. PENAL CODE. ANN. § 12.35 (West Supp. 2013). On this occasion, Young was not fined and received only a six-month sentence. The relatively short sentence could be some evidence that the State may have considered Young to be less culpable than other evaders. Even though the car was valued at $6,500.00 more than the $10,000.00 maximum fine, the difference is not so large that this weighs heavily against forfeiture. *See United States v. Wallace*, 389 F.3d 483, 486 (5th Cir. 2004) (forfeiture of $30,000.00 airplane upheld, though maximum fine for failure to register airplane was $15,000.00); *$27,877.00 Current Money of United States v. State*, 331 S.W.3d 110, 122 (Tex. App.—Fort Worth 2010, pet. denied) (forfeiture of amount 2.3 times maximum fine not excessive); *but see also One Car*, 122 S.W.3d 422 (court reversed forfeiture of $11,000.00 truck when maximum fine was $10,000.00, but no relation shown between truck and any other criminal activity and amount of drugs found was very small).

Young did not cause any actual damage, but by fleeing in a vehicle, he engaged in an inherently dangerous activity. This factor carries minimal weight.

Applying the *Bajakajian* factors, we conclude that, although the forfeiture may be somewhat disproportionate, it is not so grossly disproportionate that it violated Young's Eighth Amendment rights. *See Bajakajian*, 524 U.S. at 337. Therefore, we overrule this point of error.

We affirm the trial court's judgment

> Josh R. Morriss, III
> Chief Justice

Date Submitted:    February 12, 2014
Date Decided:      March 13, 2014