# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-40783

United States Court of Appeals
Fifth Circuit

**FILED**
July 17, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

SELENE M. SUAREZ,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before SMITH, HIGGINSON, and ENGELHARDT, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Banks are required to file a report with the Secretary of Treasury when they are "involved in a transaction for the payment, receipt, or transfer of United States coins or currency . . . in an amount" greater than $10,000. 31 U.S.C. § 5313(a); 31 C.F.R. § 1010.311; *see also United States v. Oreira*, 29 F.3d 185, 187 (5th Cir. 1994). These reports "are used by law enforcement to detect criminal activity." *United States v. Sperrazza*, 804 F.3d 1113, 1116 (11th Cir. 2015). It is a crime to structure financial transactions "for the purpose of evading" this reporting requirement. 31 U.S.C. § 5324(a)(3); *see also United States v. Lang*, 732 F.3d 1246, 1247 (11th Cir. 2013) (noting that the purpose of the structuring law is to deter those who seek to "evade[]" the reporting

No. 19-40783

requirement "through the simple expedient of dividing large cash transactions into amounts small enough not to trigger it"). This crime is known as "structuring."

A jury found Selene Suarez guilty of four counts of structuring. Subsequently, the district court entered a forfeiture judgment of $52,042 and, inter alia, sentenced Suarez to 13 months' imprisonment. Suarez presents two issues on appeal: (1) she argues that the district court erred when it denied her motion to dismiss Count 4 because Count 4 does not state an offense; and (2) she argues that the forfeiture judgment is unconstitutionally excessive under the Eighth Amendment. Because the defective indictment did not affect Suarez's substantial rights, and because the forfeiture judgment is not "grossly disproportional to the gravity of [Suarez's] offense," *United States v. Bajakajian*, 524 U.S. 321, 334 (1998), we AFFIRM.

I.

A.

From 2009 to 2018, Suarez was employed by Fernando Solloa at Solloa & Associates[1] and PetroMex Oil and Gas, LLC, another company partly owned by Solloa.[2] Suarez was the office manager for PetroMex and Solloa & Associates, and part of her job was to conduct banking transactions on behalf of the companies. In her role, Suarez sometimes "purchased" cashier's checks from banks by depositing a sum of cash into her personal banking account and requesting a cashier's check made out to Solloa, PetroMex, or Solloa & Associates in exchange for the amount deposited. On several occasions, Suarez made deposits that individually were less than $10,000 but, together, exceeded $10,000. Suarez's conduct was discovered following a search of Solloa &

---

[1] Suarez's former colleague, Erica Guerra, testified that Solloa & Associates is a real estate company.

[2] Guerra testified that PetroMex is an oil and gas exploration company.

No. 19-40783

Associates. The search warrant was issued when an investigation into the drug trafficking activities of Ismael Lechuga revealed that some of his drug trafficking proceeds were invested in real estate properties whose sales Solloa & Associates participated in.

During a three-day jury trial, the government showed that Suarez was a former bank teller at Wells Fargo, and that Wells Fargo trains its tellers that certain deposits trigger federal reporting requirements. Bank representatives testified that Suarez made the structured transactions at issue in the indictment. Suarez's former colleague at PetroMex, Erica Guerra, testified that Suarez directed her to make certain cash deposits in exchange for cashier's checks.[3] Relevant to Count 4, the government presented evidence that, on April 22, 2015, Suarez conducted two separate transactions of $5,000 each. Guerra then testified that Suarez asked her to purchase a cashier's check worth $1,100 on the same day using cash Suarez provided.

## B.

Suarez was indicted on six counts of structuring financial transactions for the purpose of evading reporting requirements, a violation of 31 U.S.C. §§ 5324(a)(3) and (d).[4] Financial institutions are required to file a report, known as a Currency Transaction Report ("CTR"), with the government when a customer conducts a cash transaction in excess of $10,000. 31 U.S.C. § 5313(a). The government alleged that Suarez evaded this reporting requirement on six occasions by structuring her cash transactions—which, in total, amounted to more than $10,000 on each occasion—to avoid detection. Suarez only challenges her conviction on Count 4, which the indictment alleges consists of

---

[3] Guerra testified that she agreed to testify truthfully in exchange for the government's agreeing to give her immunity for her testimony.

[4] A superseding indictment containing minor changes not relevant to this appeal was filed in March 2019.

No. 19-40783

two $5,000 cash deposits on April 22, 2015.

Before trial, Suarez moved to dismiss Counts 4 and 6 for failure to state an offense. Suarez argued that, in order to properly allege structuring under 31 U.S.C. § 5324(a)(3), the indictment must identify transactions that amount to *more than* $10,000 for each count. Because Counts 4 and 6 identify transactions that amount to *exactly* $10,000, Suarez argued they should be dismissed. The district court denied the motion to dismiss, stating that "[w]hether the Government will ultimately be able to prove that the charges in Counts Four and Six involved an amount of more than $10,000 is a matter to be decided at the trial."

At the close of the government's case, Suarez moved for judgment of acquittal on Counts 4 and 6 under Rule 29 because the transactions charged in the indictment for each of these counts did not amount to over $10,000. The district court granted the motion as to Count 6. The district court denied the motion as to Count 4, finding "legally sufficient evidence for the jury to make a reasonable inference" on that count because of the $1,100 Guerra transaction directed by Suarez on the same date as the charged transactions in Count 4. Suarez filed a renewed motion for judgment of acquittal after trial, reciting many of the same arguments made orally after the close of the government's case. At sentencing, the district court denied the renewed motion for judgment of acquittal, explaining "that the jury's verdict was based upon evidence beyond a reasonable doubt."

The jury found Suarez guilty of Counts 1, 3, 4, and 5. The jury found Suarez not guilty of Count 2.

C.

At sentencing, the district court meticulously analyzed each transaction attributed to Suarez, which totaled $83,420, and Suarez's counsel agreed to

4

this calculation.[5] The government sought a forfeiture judgment of $52,040, corresponding to the total funds involved in the counts for which Suarez was convicted.[6] Suarez argued that the requested forfeiture judgment was excessive because the money she deposited did not belong to her, but instead belonged to her employer.[7] The government responded that (1) it is irrelevant whether Suarez owned the structured funds; and (2) the maximum forfeitable property from a structuring offense is the amount of money "involved in the offense." Because the parties agreed that the amount involved was $83,420, in the government's view, any forfeiture judgment under that amount would be appropriate. Finally, the government noted that the forfeiture judgment fell far below the maximum statutory fine of $250,000. *See* 18 U.S.C. § 3571;

The court found it irrelevant whether the structured funds belonged to Suarez and whether they originated from or were going toward an illegal purpose. After noting that the government's requested forfeiture judgment ($52,040) was less than the agreed-upon amount involved in the offenses ($83,420), the district court entered a $52,042 forfeiture judgment.[8] Additionally, the district court sentenced Suarez to four concurrent terms of 13 months in prison, within the Guidelines range of 10 to 16 months. The district court also imposed a three-year term of supervised release and a $400

---

[5] This calculation included the amounts involved in (i) Counts 1, 3, 4 and 5, the counts on which Suarez was convicted; (ii) Count 2, on which Suarez was found not guilty; and (iii) unindicted amounts totaling $10,280. Suarez's defense counsel agreed to this calculation despite the fact that it included a count for which she was acquitted.

[6] The $31,380 difference between the court's finding for the amount involved and the government's forfeiture request consists of amounts involved in Count 2 and unindicted amounts.

[7] At sentencing, Suarez also argued for a minor role reduction and a reduction under the safe harbor provision. Both of those requests were denied.

[8] Although the transcript states that the district court ordered a forfeiture judgment of $52,000.40, this appears to be a typographical error given the government's request for $52,040. Further, the written judgment reflects a forfeiture amount of $52,042. On appeal Suarez does not object to the two-dollar difference between the oral judgment and written judgment.

No. 19-40783

special assessment. Suarez timely appealed.

## II.

Suarez argues that the district court reversibly erred when it denied her motion to dismiss Count 4 because Count 4 fails to state an offense.[9] Suarez emphasizes that the two charged transactions listed in the indictment for Count 4 amounted to only $10,000, and it is only a crime for an individual to structure a currency transaction in a manner that evades reporting amounts of *"greater than* $10,000." *Oreira*, 29 F.3d at 187 (emphasis added). Because the banks would not have been required to submit a CTR *even if* Suarez had deposited $10,000 at one time, she argues that she could not have been evading the banks' reporting obligations when she split the transaction into two deposits of $5,000 each. The government concedes that the Count 4 indictment did not allege transactions exceeding $10,000 but still contends the indictment was sufficient because it listed the elements of the crime and informed Suarez of factual allegations against her. *See Hamling v. United States*, 418 U.S. 87, 117 (1974).

We conclude that the Count 4 indictment fails to state an offense. However, we also conclude that, given the evidence introduced at trial, the defect is harmless. Therefore, we affirm the district court's denial of Suarez's motion to dismiss Count 4.

## A.

"Denial of a motion to dismiss an indictment is reviewed *de novo*," *United States v. Montgomery*, 746 F. App'x 381, 384 (5th Cir. 2018), but subject to harmless error analysis. *United States v. Dentler*, 492 F.3d 306, 310 (5th Cir. 2007); *United States v. Adams*, 314 F. App'x 633, 642 (5th Cir. 2009) ("If an

---

[9] Suarez does not challenge the district court's denial of her motion for judgment of acquittal.

No. 19-40783

indictment fails to allege an element, we review the failure for harmless error.").

The Federal Rules of Criminal Procedure require that the indictment be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1).

> In determining whether an indictment is sufficient, we do not ask whether the indictment could have been better drafted, but whether it conforms to minimal constitutional standards. These minimum constitutional standards are met where the indictment alleges every element of the crime charged and in such a way as to enable the accused to prepare his defense and to allow the accused to invoke the double jeopardy clause in any subsequent proceeding.

*Dentler*, 492 F.3d at 309 (internal quotation marks and citation omitted).

To be sufficient, an indictment must "1) enumerate[] each *prima facie* element of the charged offense, 2) notif[y] the defendant of the charges filed against him, and 3) provide[] the defendant with a double jeopardy defense against future prosecutions." *United States v. Nevers*, 7 F.3d 59, 62 (5th Cir. 1993) (citing *Hamling*, 418 U.S. at 117; *United States v. Prince*, 868 F.2d 1379, 1383 (5th Cir. 1989), *cert. denied*, 493 U.S. 932).

Under the first prong of this analysis, an indictment must state each element of the charged crime and allege that the defendant's conduct met each of those elements. *See United States v. London*, 550 F.2d 206, 211 (5th Cir. 1977); *see also Dentler*, 492 F.3d at 309 ("To be valid, an indictment 'must charge positively and not inferentially everything essential.'" (quoting *Wilkins v. United States*, 376 F.2d 552, 562 (5th Cir. 1967))); *United States v. Wilson*, 884 F.2d 174, 179 (5th Cir. 1989) ("The Fifth and Sixth Amendments demand that a grand jury indictment set forth each essential element of an offense."); *United States v. Meacham*, 626 F.2d 503, 507 (5th Cir. 1980). "In reviewing a challenge to an indictment alleging that it fails to state an offense, the court is required to take the allegations of the indictment as true and to determine

whether an offense has been stated." *United States v. Crow*, 164 F.3d 229, 234 (5th Cir. 1999). The indictment must "*allege* that the defendant committed each of the essential elements of the crime charged"; it is not sufficient to merely *state* the elements of the crime. *United States v. Oberski*, 734 F.2d 1034, 1035 (5th Cir. 1984) (emphasis added).

The Count 4 indictment fails the first *Hamling* prong because it does not allege that Suarez committed each element of the charged crime.[10] To prove a structuring offense, the government must prove the defendant (1) engaged in structuring; (2) did so with the knowledge that the financial institutions involved in the transaction were obligated to report currency transactions involving more than $10,000; and (3) intended to evade this reporting requirement. 31 U.S.C. § 5324(a)(3); *United States v. MacPherson*, 424 F.3d 183, 189 (2d Cir. 2005); *see also United States v. Sweeney*, 611 F.3d 459, 470 (8th Cir. 2010); Fifth Cir. Criminal Pattern Jury Instructions § 2.104 (2019). The indictment lists each of these elements, stating that Suarez "knowingly and for the purpose of evading the reporting requirements of [§ 5324(a)(3)] structured the following transactions with domestic financial institutions." The government went on to allege in Count 4 of the indictment that Suarez engaged in two $5,000 transactions on April 22, 2015. These transactions, together, amount to $10,000.

Even taking the government's allegations as true, Suarez's charged conduct does not present a structuring offense because it does not allege transactions involving more than $10,000. As the Eleventh Circuit has held, a

---

[10] The government argues that Suarez has abandoned any argument on this prong because she does not "specify which essential elements of the charge were omitted." *United States v. Sparkman*, 112 F. App'x 358, 359 (5th Cir. 2004). But Suarez states clearly in her brief that "Count 4 failed to allege transactions totaling more than $10,000." By contrast, we note that Suarez has not argued either constructive amendment or variance relating to her conviction on Count 4.

structuring count that does not allege the structured transactions involved more than $10,000 should be dismissed. *Lang*, 732 F.3d at 1249 (dismissing 85 structuring counts because none of them individually amounted to more than $10,000). This makes sense—Suarez could not have intended to evade the reporting requirements when, even if she had deposited the money all at once, no reporting requirements would have been triggered. *Id.* at 1248 ("[I]n order to be 'for the purpose of evading' the reporting requirements, the structured transaction must involve an amount that is more than $10,000; otherwise, evasion would not be necessary or possible because there would be no reporting requirement anyway.") The Count 4 indictment fails to state an offense.

### B.

This conclusion does not end our inquiry, however. Even if the indictment fails to state an offense, this court reviews for harmless error. *Dentler*, 492 F.3d at 310; *Adams*, 314 F. App'x at 642 ("If an indictment fails to allege an element, we review the failure for harmless error."); *see also Crow*, 164 F.3d at 235 ("The proper test for determining the validity of the indictment is whether or not the defendant has been prejudiced by the alleged deficiency."). Because an indictment that fails to state an offense is a constitutional error, "[t]he question is whether the error affects substantial rights." *United States v. Robinson*, 367 F.3d 278, 286–87 (5th Cir. 2004). "[W]e inquire whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Id.* at 287 (quoting *Chapman v. California*, 386 U.S. 18, 23 (1967)).

"[T]he two primary functions of an indictment are that it (1) provides notice of the crime for which the defendant has been charged, allowing him the opportunity to prepare a defense; and (2) interposes the public into the charging decision, such that a defendant is not subject to jeopardy for a crime alleged only by the prosecution." *Id.* (citations omitted). Although the

indictment here failed to state an offense, both of these functions were satisfied. Therefore, the error is harmless because it did not affect Suarez's substantial rights.

Despite the indictment's failure to state an offense as to Count 4, Suarez had adequate notice of the charged crime. Suarez does not allege that she was unaware of the government's theory or blindsided by the government's use of the Guerra transaction to surpass the $10,000 threshold at trial. *Crow*, 164 F.3d at 235 (finding deficient indictment harmless where defendant failed to "allege, show or [prove that he] suffer[ed] prejudice."). Indeed, in its response to Suarez's motion to dismiss filed more than three weeks before trial, the government explicitly stated the evidence would show that Suarez directed the $1,100 Guerra transaction. Thus, Suarez was put on notice about the government's theory and "does not contend that the content or timing of the notice left [Suarez] unable to prepare a defense." *Robinson*, 367 F.3d at 287.

Second, we inquire whether "on the basis of the evidence that would have been available to the grand jury, any rational grand jury presented with a proper indictment would have charged that [Suarez] committed the offense in question." *Id.* at 288; *Dentler*, 492 F.3d at 311 ("We must . . . consider whether [Suarez] suffered harm in losing the right to have the public determine whether there existed probable cause to charge" the offense). While this court has never endorsed a "categorical rule" that the petit jury's finding of guilt necessarily means that the grand jury would have found probable cause to charge the offense if presented with the correct standard, such a finding is "at a minimum, persuasive evidence of how a grand jury would find." *Robinson*, 367 F.3d at 289.

Here, the jury heard evidence that Suarez conducted two $5,000 transactions *and* directed Guerra to conduct an additional $1,100 transaction all on the same day. The jury also heard evidence that Suarez was previously

No. 19-40783

a bank teller, a role in which she would have received training about banks' reporting obligations. With this evidence, a "rational grand jury [could] find probable cause to charge" Suarez with structuring. *Id.* at 288. The fact that the petit jury convicted Suarez on Count 4 provides independent persuasive evidence that the grand jury would have charged Suarez with Count 4. *Id.* Therefore, "any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." *Dentler*, 492 F.3d at 312 (quoting *United States v. Mechanik*, 475 U.S. 66, 71 (1986)).

## C.

We affirm the district court's order denying Suarez's motion to dismiss Count 4.

## III.

Suarez argues that the $52,042 forfeiture judgment is excessive under the Eighth Amendment. For the reasons below, and particularly because the forfeiture amount is a fraction of the statutory maximum and less than double the Guidelines maximum, the forfeiture judgment is not unconstitutionally excessive. Therefore, we affirm the judgment.

## A.

This court reviews the constitutionality of a forfeiture judgment de novo, while factual findings related to the excessiveness inquiry are reviewed for clear error. *Bajakajian*, 524 U.S. at 336 & n.10; *United States v. Wyly*, 193 F.3d 289, 303 (5th Cir. 1999). The Excessive Fines Clause of the Eighth Amendment states that "excessive fines" shall not be imposed by the government. U.S. CONST. amend. VIII. "The Excessive Fines Clause . . . 'limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense.'" *Bajakajian*, 524 U.S. at 328 (quoting *Austin v. United States*, 509 U.S. 602, 609–10 (1998)). "An in personam, criminal forfeiture is a form of monetary

11

punishment" subject to the Excessive Fines Clause.[11] *United States v. Haro*, 753 F. App'x 250, 259 (5th Cir. 2018); *see also Alexander v. United States*, 509 U.S. 544, 558 (1993) ("The *in personam* criminal forfeiture at issue here is clearly a form of monetary punishment no different, for Eighth Amendment purposes, from a traditional 'fine.'").

In order to show that the Excessive Fines Clause has been violated, Suarez must show that the forfeiture "is grossly disproportional to the gravity of [her] offense." *Bajakajian*, 524 U.S. at 334. In *Bajakajian*, the defendant was convicted of failing to report that he was transporting more than $10,000 outside the United States. *Id.* at 325. The government sought forfeiture of the entire amount Bajakajian was attempting to transport—$357,144. *Id.* The district court found that the funds were "not connected to any other crime" and that the defendant "was transporting the money to repay a lawful debt." *Id.* at 326. Therefore, the district court ordered forfeiture of only $15,000 and imposed a fine of $5,000. *Id.*

The government's appeal ultimately reached the Supreme Court, which held that the government's requested $357,144 forfeiture would violate the Excessive Fines Clause. *Id.* at 337. The Court noted that (1) the crime was, in essence, a reporting offense; (2) the crime "was unrelated to any other illegal activities"; (3) the defendant did not "fit into the class of persons for whom the statute was principally designed", such as "money launderer[s], . . . drug trafficker[s], or . . . tax evader[s]"; (4) the maximum fine under the Guidelines was $5,000, while the maximum statutory fine was $250,000; and (5) the harm caused by the crime was minimal because it "affected only one party, the Government, and in a relatively minor way." *Id.* at 337–339 & nn. 12–14.

---

[11] The government does not dispute that the Excessive Fines Clause applies to the forfeiture judgment at issue here.

No. 19-40783

After *Bajakajian*, the factors this court considers when making the proportionality determination are: "(a) the essence of the defendant's crime and its relationship to other criminal activity; (b) whether the defendant was within the class of people for whom the statute of conviction was principally designed; (c) the maximum sentence, including the fine that could have been imposed; and (d) the nature of the harm resulting from the defendant's conduct." *United States v. Mora*, 644 F. App'x 316, 317 (5th Cir. 2016).

i.

In order to assess the gravity of the offense, this court first considers the "essence" of the crime and its relationship to other criminal activities. *Bajakajian*, 524 U.S. at 337–38; *Mora*, 644 F. App'x at 317. Here, the evidence shows that the gravity of Suarez's crime was relatively severe. Distinguished from the one-time reporting violation in *Bajakajian*, Suarez conducted multiple structured transactions on four occasions across a 27-month period. This court has repeatedly held that the "ongoing" nature of a defendant's conduct contributes to the gravity of the offense. *See, e.g.*, *United States v. Wallace*, 389 F.3d 483, 487–88 (5th Cir. 2004) (operating unregistered airplane for seven years resulted in forfeiture of $30,000 airplane); *Haro*, 753 F. App'x at 259–60 ("In contrast to the one-time currency reporting offense in *Bajakajian*, Haro participated in a two-year conspiracy to launder drug proceeds."); *Wyly*, 193 F.3d at 303 (affirming forfeiture judgment as non-excessive where "the scheme continued for more than six years."); *cf. United States v. Reed*, 908 F.3d 102, 126 (5th Cir. 2018) (conducting "twenty-year scheme to defraud" that included *identifiable victims* justified $574,063.25 forfeiture order). The recurring nature of Suarez's crimes elevates their severity.

Further, the record reflects that Suarez's structuring offenses were related to other crimes, a fact the Supreme Court described as "highly relevant

to the determination of the gravity" of a particular offense. *Bajakajian*, 524 U.S. at 337 n.12. Indeed, each of Suarez's convictions for structuring was related to her other convictions for structuring and, therefore, necessarily related to other crimes.

We recognize that Suarez's offenses harmed no identifiable victims other than the government, like the offense in *Bajakajian*. *Id.* at 337. Despite this mitigating factor, the recurring nature of the offenses and the proximity of the offenses to one another mean the offenses are still grave.

ii.

Next, we consider whether Suarez "fit[s] into the class of persons for whom the statute was principally designed." *Id.* at 338; *see Wallace*, 389 F.3d at 485. The Supreme Court has found that currency reporting statutes are primarily designed to ferret out "money launderer[s], . . . drug trafficker[s], or . . . tax evader[s]." *Bajakajian*, 524 U.S. at 338. Here, although Suarez was not charged with money laundering, drug trafficking, or tax evasion, the district court stated that Suarez was purchasing cashier's checks on behalf of a company implicated in selling real estate to a drug trafficker. Further, the presentence investigation report ("PSR") alleges that Suarez's transactions were part of a money laundering operation. Suarez argues that there is no direct evidence that the structured funds originated from an illicit source. However, the district court found that Suarez "acted with reckless disregard" as to the source of the funds and that the entire operation was "highly suspicious." In light of these findings, while Suarez may not fall "at the dead center" of the class of persons targeted by the structuring statute, *Sperrazza*, 804 F.3d at 1127, she likely falls somewhere within it because, according to the PSR, her transactions were part of a money laundering scheme.[12]

---

[12] Suarez does not challenge this portion of the PSR, so we are entitled to rely upon it.

iii.

We now compare the forfeiture judgment to the Guidelines maximum and the maximum statutory forfeiture amount. *Bajakajian*, 524 U.S. at 339 & n.14 (finding relevant the fact that "the maximum fine and Guideline sentence to which respondent was subject were but a fraction of the penalties authorized."). "[I]f the value of the forfeited property is within the range of fines prescribed by Congress, a strong presumption arises that the forfeiture is constitutional." *Wallace*, 389 F.3d at 486 (quoting *United States v. 817 N.E. 29th Drive*, 175 F.3d 1304, 1309 (11th Cir. 1999)); *see also Mora*, 644 F. App'x at 318.

Here, the maximum statutory fine is $250,000 and the Guidelines recommend a fine range of $3,000 to $30,000.[13] *See* 18 U.S.C. § 3571(b); Because the $52,042 forfeiture falls well within the $250,000 maximum fine "prescribed by Congress," there is a "strong presumption . . . that the forfeiture is constitutional." *817 N.E. 29th Drive*, 175 F.3d at 1309. Further, because the forfeiture is less than double the Guidelines maximum of $30,000, the amount of the forfeiture militates against a finding that it is "grossly disproportional." *See Haro*, 753 F. App'x at 259 (rejecting excessiveness challenge where forfeiture was less than the statutory maximum and five to six times greater than the Guidelines maximum); *see also United States v. Dalcourt*, 722 F. App'x 385, 385 (5th Cir. 2018) (rejecting excessiveness challenge where forfeiture was "well below" the statutory maximum and more than double the Guidelines maximum); *United States v. $78,882.00 In U.S. Currency*, 464 F. App'x 382, 384 (5th Cir. 2012) (upholding, on plain error review, forfeiture of entire

---

[13] The district court calculated an offense level of 12 and found that the appropriate fine range was $3,000 to $30,000. We note that the Guidelines set a fine range of $5,500 to $55,000. U.S.S.G. § 5E1.2(c)(3). However, given that the government concedes the maximum Guidelines fine is $30,000, we proceed under that assumption.

$78,882 defendants attempted to transport outside the United States without reporting); *cf. Bajakajian*, 524 U.S. at 340 (holding that forfeiture 70 times the Guidelines maximum and greater than the statutory maximum would be unconstitutionally excessive).

iv.

The final factor we consider when conducting the proportionality analysis is the extent and nature of the harm Suarez caused. *Bajakajian*, 524 U.S. at 339; *Mora*, 644 F. App'x at 317; *see also United States v. 3814 NW Thurman St., Portland, Or., A Tract of Real Property*, 164 F.3d 1191, 1197 (9th Cir. 1999), *opinion amended on denial of reh'g sub nom. United States v. 3814 NW Thurman St., Portland, Or.*, 172 F.3d 689 (9th Cir. 1999). In *Bajakajian*, the Supreme Court held that a failure to report transportation of $357,144 of currency outside the United States caused "minimal" harm because it "affected only one party, the Government, and in a relatively minor way." 524 U.S. at 339. The Supreme Court emphasized that the crime did not involve a fraud on the United States and that the United States suffered no loss as a result of Bajakajian's crime. *Id.*; *see also 3814 NW Thurman St.*, 164 F.3d at 1197.

Similar to the crime in *Bajakajian*, Suarez's crime impacted the government and the government suffered no actual monetary loss. Instead, the harm suffered is reduced information about the flow of currency in and out of banks. The government states that this reduced information could have impacted law enforcement's ability to detect Solloa's and Lechuga's alleged criminal activity. *See Sperrazza*, 804 F.3d at 1116; *see also United States v. Taylor*, 816 F.3d 12, 20 n.7 (2d Cir. 2016) (explaining that CTRs "safeguard the financial industry from threats posed by money laundering and other financial crime"). For these reasons, the harm resulting from Suarez's crime contributes little to its gravity.

No. 19-40783

v.

Suarez urges us to rely on other factors not identified as relevant factors in *Bajakajian*. First, Suarez argues that, because the money she used to purchase cashier's checks was not hers, she should not be required to forfeit her personal funds. Suarez points to *Bajakajian*, which rejected as "grossly disproportional" a forfeiture judgment that would have resulted in the forfeiture of the entire amount the defendant attempted to transport outside the United States without reporting. *Bajakajian*, 524 U.S. at 344. There, the funds belonged to the defendant. *Id.* at 326. Suarez argues that the facts here are even more egregious—the money the government seeks as a forfeiture doesn't belong to Suarez.

We reject Suarez's argument for two reasons. First, in *Bajakajian*, the funds "were not connected to any other crime" and the defendant "was transporting the money to repay a lawful debt." *Id.* But the circumstances surrounding Suarez's funds are less innocuous—the district court found that Suarez "acted with reckless disregard" as to the source of the funds and noted that Suarez's conduct was "highly suspicious." Second, although Suarez states on appeal that the structured funds did not belong to her, she points to no evidence to corroborate this statement.

Finally, Suarez makes a fleeting statement that she is "unable to pay" the forfeiture judgment "or any fine." Suarez cites no authority to support her contention that her ability to pay is relevant to the proportionality inquiry.[14] To the contrary, other circuits have held that "excessiveness is determined in relation to the characteristics of the offense, not in relation to the characteristics of the offender." *817 N.E. 29th Drive*, 175 F.3d at 1311.

---

[14] If Suarez's financial position becomes untenable, it appears that the Attorney General and Secretary of the Treasury retain authority to remit a forfeiture on hardship grounds. 21 U.S.C. §§ 853(j), 881(d); 19 U.S.C. § 1618.

No. 19-40783

Regardless, an appellant who "asserts an argument on appeal, but fails to adequately brief it, is deemed to have waived it." *United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010) (quoting *Knatt v. Hosp. Serv. Dist. No. 1*, 327 F. App'x 472, 483 (5th Cir. 2009)).

## B.

The $52,042 forfeiture judgment is not "grossly disproportional" when compared to the gravity of Suarez's offenses. Suarez's offenses were intentional efforts to evade a reporting requirement, related to other criminal activity, conducted over a 27-month period, and the $52,042 forfeiture is a fraction of the statutory maximum and less than double the Guidelines maximum.

## IV.

We AFFIRM the district court's denial of Suarez's motion to dismiss Count 4 and AFFIRM the district court's $52,042 forfeiture judgment.