# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 29, 2023

Lyle W. Cayce
Clerk

———————

No. 22-60350

———————

United States of America,

*Plaintiff—Appellee*,

*versus*

Kevin L. Crandell,

*Defendant—Appellant*.

———————————————————

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:20-CR-61-1

———————————————————

Before Jones, Clement, and Haynes, *Circuit Judges*.

Edith H. Jones, *Circuit Judge*:

Kevin Crandell brings this appeal after a jury found him guilty of tax evasion in violation of 26 U.S.C. § 7201. The evidence against him supports this charge, and the district court did not abuse its discretion by denying a motion for mistrial. Therefore, we AFFIRM.

## I. Background

Kevin Crandell is a medical doctor. At the times relevant to this appeal, he contracted with two hospitals, one in Mississippi and one in Alabama. He usually made $30,000 to $40,000 per month. Because he was

No. 22-60350

a contractor, the hospitals did not withhold any wages for tax purposes—Crandell was solely responsible for satisfying his federal tax obligations.

From 2006 through 2012, Crandell did not pay any income taxes or file any timely tax returns. He racked up $943,493 in owed taxes, interest, and penalties as a result. Although Crandell testified that he briefly visited a certified public accountant in 2008, he took no substantive steps towards addressing his tax debt until 2010, right after the IRS began garnishing his bank accounts.

Around the same time, Crandell created two corporations: a Mississippi corporation called "Kevin Crandell, M.D., Inc." and a Wyoming corporation called "CHBK, Inc." He used Kevin Crandell, M.D., Inc. to receive the money he earned as a contractor, and then paid himself a salary through the corporation. He created CHBK, Inc. to shield various assets he owned from liability lawsuits. Crandell exercised complete control over both entities.

In 2010, Crandell hired Blue Tax to help him sort out his tax situation. Yet his tax returns were not filed for another four years. Part of the delay was due to Crandell's failure to send Blue Tax his information in a timely manner, and part was due to Blue Tax misplacing Crandell's finalized returns. Even when his returns had been filed, Crandell did not pay off the tax liability he had accumulated.

Crandell worked with Blue Tax to submit a Form 433-A to the IRS. This form is used by the IRS to craft a financially viable payment plan for people who are behind on their taxes. To help Blue Tax draft the form, Crandell submitted payroll stubs from Kevin Crandell M.D., Inc. indicating that he made about $17,000 per month. But when Blue Tax sent him a preliminary draft of the Form 433-A, Crandell told them that his income had declined and that the draft was inaccurate. He provided new pay stubs

No. 22-60350

indicating that he made $11,783 per month. This income was $350 lower than his estimated living expenses. Blue Tax submitted the form using this new information.

The submitted Form 433-A downplayed Crandell's income and omitted key assets. Although different documents state or imply a large range of incomes ($17,000–$30,000 per month) on Crandell's part, the $11,783 per month figure was well below all other contemporaneous evidence of his income. Moreover, Crandell wrote himself two checks from Kevin Crandell M.D., Inc. for a total of $40,000 shortly after submitting the Form 433-A, providing a substantial financial boost. The form did not accurately list his personal assets, including a $50,000 gun collection. And it did not list the bank accounts associated with Crandell's corporations, even though he often used the accounts to pay for personal expenses.

Crandell was indicted and tried for submitting a fraudulent Form 433-A, which the government characterized as tax evasion in violation of 26 U.S.C. § 7201.

At trial, the prosecution asked Crandell two questions during cross-examination that led the defense to move for mistrial. When Crandell took the stand to testify in his defense, he stated that "from the minute I hired Blue Tax until now, I only want to do one thing. . . . I just want to pay the taxes and get left alone." The prosecution followed up on this statement by asking, "So, 2006 to 2012, you don't file a tax return, and then you don't pay anything on those taxes, and now—what you said. That's your word, now—2022, you still haven't paid?" The district court sustained an objection from the defense on relevance grounds before Crandell could answer. The prosecution then asked, "You have not filed a personal tax return since 2014, have you?" The court again sustained a relevance objection before Crandell responded. Crandell's counsel moved for a mistrial; the district court denied

No. 22-60350

the motion but gave the jury a limiting instruction directing them to disregard any tax activity after the date alleged in the indictment (January 6, 2015).

The jury convicted Crandell, and the court sentenced him to 33 months' imprisonment and $972,493.86 of restitution. He timely appealed.

## II. Discussion

Crandell raises two claims on appeal: *first*, that the evidence at trial was insufficient to support a conviction for tax evasion under 26 U.S.C. § 7201; and *second*, that the district court abused its discretion by denying his motion for a mistrial. Both claims fail.

### A. Sufficiency of the Evidence

Preserved challenges to the sufficiency of the evidence are reviewed *de novo. United States v. Kieffer*, 991 F.3d 630, 634 (5th Cir. 2021). Appellate courts affirm on the sufficiency of the evidence if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). At this stage, the "evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and this court will accept all credibility choices that tend to support the verdict." *United States v. Stevenson*, 126 F.3d 662, 664 (5th Cir. 1997).

Crandell's sufficiency challenge takes two independent forms. The first is that submitting a false Form 433-A cannot support a conviction for tax evasion as a matter of law. The second is that the evidence does not show that he willfully evaded his tax obligations. These arguments miss the mark.

Title 26 U.S.C. § 7201 penalizes "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof." Courts have long held that § 7201 has three elements:

No. 22-60350

"(1) willfulness, (2) existence of a tax deficiency; and (3) an affirmative act constituting an evasion or attempted evasion of the tax." *United States v. Nolen*, 472 F.3d 362, 377 (5th Cir. 2006); *see also Sansone v. United States*, 380 U.S. 343, 351, 85 S. Ct. 1004, 1010 (1965).

Crandell argues that submitting a fraudulent Form 433-A is *per se* insufficient evidence that a defendant has violated 26 U.S.C. § 7201. Taxpayers like Crandell send these forms to the IRS to solicit a payment plan—a schedule of payments that reflects the amount owed as well as the taxpayer's capacity to pay. A payment plan does not change the amount owed. Therefore, Crandell concludes that even if his Form 433-A was intentionally falsified, it would not "evade or defeat any tax imposed," but merely change the timetable for repayment. He contrasts soliciting a payment plan with submitting an "offer in compromise," which is a settlement offer submitted by the debtor that can reduce the amount owed. *Young v. United States*, 535 U.S. 43, 53, 122 S. Ct. 1036, 1042 (2002). An offer in compromise involves submitting a special version of Form 433-A as well as meeting several other requirements, an option Crandell does not seem to have pursued.

We disagree. The Fifth Circuit has not previously ruled on this issue, and the parties have identified little precedent from other courts.[1] Yet the

---

[1] Of the federal courts of appeals, only the Ninth Circuit has squarely held that false statements on a Form 433-A can sustain a conviction for tax evasion. *United States v. Memmott*, 667 F. App'x 206, 207 (9th Cir. 2016) ("[F]alse statements on the Form 433–A alone are sufficient evidence that [the defendant] attempted to evade paying his back taxes."). However, the Eighth Circuit seems to have assumed as much. *United States v. Montanari*, 863 F.3d 775, 780 (8th Cir. 2017) ("To convict Montanari of tax evasion, the jury was required to find that he willfully performed one of two affirmative acts alleged in the indictment. Those acts were Montanari's filing of a false and fraudulent Form 433-A in December 2009 and his transfer of funds from his companies to the Bella Luca bank account.").

text of the statute proscribes evading "any tax imposed by this title *or the payment thereof*." 26 U.S.C. § 7201 (emphasis added). Understating one's financial status on a Form 433-A does not change one's tax liability in the abstract, but it does reduce *the payments* due on that debt. This is especially so where, as here, the form states that the debtor's expenses exceed his income. Barring any law to the contrary, a taxpayer could string the IRS along for his entire lifetime by racking up huge debts and then arranging generously slow repayment schedules using Form 433-As that undersell his income and assets. But that would be an "attempt[] . . . to evade or defeat" the "payment" of due taxes. 26 U.S.C. § 7201. Therefore, Crandell's conduct—the intentional filing of a false Form 433-A—violates 26 U.S.C. § 7201.

Crandell also argues that there is insufficient evidence that he willfully took any affirmative actions to evade taxes. He avers that IRS garnishments account for why his salary was lower when he submitted the Form 433-A, citing an October 2014 garnishment that accounted for his entire pay for the month. He also notes that he supplied other documents to the IRS and Blue Tax that reflected a much higher income around the same time. He claims that the existence of such documents proves he was not willfully attempting to hide his income from the IRS. And he argues that the documents establish that Blue Tax had access to all his financial information and thus bears the responsibility for any errors in the Form 433-A.

Viewing the evidence in the light most favorable to the verdict, a rational juror could disagree. Even if it was legitimate for Crandell to deduct IRS garnishments from his income, that does not explain why Crandell neglected to mention key assets on the form—such as the $50,000 gun collection and the corporate bank accounts that he used to pay personal

expenses.[2] Moreover, the prosecution presented evidence suggesting that he manipulated his wages to artificially depress his income at the time he submitted the Form 433-A. A month after submission, he paid himself a $40,000 "bonus," increasing his income considerably. And a credit application that Crandell prepared around this time stated his monthly income was over $22,000, roughly double what he claimed on the Form 433-A. Based on this evidence, a rational juror could conclude that Crandell knew that his true income was considerably higher than that listed on the form and willfully misled the IRS about his ability to pay.

Crandell's reliance on Blue Tax also does not constitute a sufficient defense. "To establish reliance as a defense, [a defendant] must show that: (i) he relied in good faith on a professional and (ii) he made complete disclosure of all the relevant facts." *United States v. Masat*, 948 F.2d 923, 930 (5th Cir. 1991). The problem for Crandell is that he did not fully rely on Blue Tax nor disclose all the relevant facts. When Blue Tax drafted a Form 433-A that reflected an income about $5,000 higher than his living expenses, Crandell submitted new pay stubs that suggested, contrary to all other documentation, that his income was slightly lower than his living expenses. Crandell's intervention is incompatible with the reliance defense.

## B. Mistrial Motion

"When the issue is preserved, as here, this court reviews the denial of a mistrial for abuse of discretion." *United States v. Hill*, 63 F.4th 335, 351 (5th Cir. 2023). If a motion for mistrial is based on the presentation of

---

[2] Crandell claims that he was only borrowing the money he spent on personal items, and that he "trued up" at the end of the year—shortly after the Form 433-A was submitted. But a reasonable jury could conclude that this arrangement amounted to an "affirmative act[] [that] had the likely effect of misleading the IRS" as to his ability to pay. *United States v. Miller*, 588 F.3d 897, 907 (5th Cir. 2009) (brackets and quotation marks omitted).

prejudicial testimony, "a new trial is required only if there is a significant possibility that the prejudicial evidence had a substantial impact upon the jury verdict, viewed in light of the entire record." *United States v. Paul*, 142 F.3d 836, 844 (5th Cir. 1998). "We give great weight to the trial court's assessment of the prejudicial effect of the evidence, and prejudice may be rendered harmless by a curative instruction." *United States v. Valles*, 484 F.3d 745, 756 (5th Cir. 2007).

Crandell argues that the prosecution's questions about his post-2014 taxes were irrelevant, prejudicial, and violated the rules for character evidence in a criminal trial. He emphasizes that he was not on trial for post-2014 conduct and contends that the implication that he has not paid taxes since 2014 is false. He avers that the prosecution's decision to ask a second question along these lines—after the district court sustained an objection to the first one—shows that the prosecution did not act in good faith. He also argues that the question was impermissible character evidence under Federal Rule of Evidence 404(b). Moreover, he states that even if the question was permissible character evidence, the prosecution failed to give the defense notice as required by Federal Rule of Evidence 404(b)(3).

The government argues that this line of questioning was defensible under Federal Rule of Evidence 608(b), which allows inquiries into a witness's character for truthfulness. "Whether Rule 404(b) or Rule 608(b) applies to the admissibility of other-act evidence depends on the purpose for which the prosecutor introduced the other-acts evidence." *United States v. Tomblin*, 46 F.3d 1369, 1388 (5th Cir. 1995). Rule 404(b) applies where the evidence is meant to prove an issue in the case, such as identity or intent. *Id.* Rule 608(b) applies where evidence is offered to impeach the credibility of a witness. *Id.* In the government's view, the defendant opened the door to questions about his post-2014 tax conduct when he testified that "from the minute I hired Blue Tax until now, I only want to do one thing. . . . I just want

to pay the taxes and get left alone." Thus, whether Crandell had paid taxes was arguably admissible because it was "probative of [the defendant's] character for truthfulness." *Id.* at 1389.

But even assuming that the district court was right to sustain the defense's objection, Crandell offers no reason to believe that the questions incurably prejudiced the jury. Given the weight of evidence presented to the jury in this case, there is no "significant possibility" that these two questions—to which Crandell never provided an answer and which the court quickly instructed the jury to disregard—had a substantial impact on the verdict. *Paul*, 142 F.3d at 844. The trial court assessed the prejudicial effect of the questions, and this court defers to its conclusion. *Valles*, 484 F.3d at 756.

## III. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.