# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 2, 2026

Lyle W. Cayce
Clerk

No. 24-20515

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

ISAAC AMBE NFORMANGUM,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CR-367-1

Before HAYNES, DUNCAN, and RAMIREZ, *Circuit Judges*.

PER CURIAM:[*]

Isaac Ambe Nformangum challenges his conviction under 18 U.S.C. § 875(c), after a bench trial, for leaving a threatening voicemail message at the office of a United States Senator. We AFFIRM.

I

Nformangum was federally indicted for threatening to murder a United States Official in violation of 18 U.S.C. § 115(a)(1)(B) and §115(b)(4)

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-20515

(Count 1), and for transmitting in interstate commerce a communication with a threat to injure in violation of 18 U.S.C. §875(c) (Count 2). Shortly before jury selection was set to begin, the parties advised the district court that Nformangum had agreed to waive a jury trial and proceed before the court on Count 2, and the government had agreed to dismiss Count 1. The parties subsequently submitted a joint stipulation of evidence, which the prosecutor read into the record.

According to the stipulation, on June 26, 2022, Nformangum left a voice message at the Houston office of Senator Rafael Edward "Ted" Cruz, in which he stated:

> Okay. Hello and good afternoon, Senator Rafael. This is one of the many Afro-American constituents of who you are representing here in Texas. As you currently serve from the senate, I have just read the Texas Republican Party's platform for this current 2020 where it is apparent that your many colleagues intend to have the Voting Rights Act appealed and not reauthorized. Every last one of your Republican colleagues to sign off on that platform is to be found in—is to be found and killed, be it by a bullet to the face or by the smashing of a brick in your skull. It is a civic duty of every American citizen or resident to see to it that every last one of your colleagues is to be killed, be it by finding you in a public space or by trailing you to your very—by your very public homes, the address of which are public knowledge. You and every one of your colleagues is to be shot dead, found and killed. You sick pieces of human scum will not have the f'ing audacity to address this any further and to strip us of our rights like you did our grandparents so many years ago. You will be found and killed, as a civic duty of

every American to do so. F you. F you, Rafael, you piece of human scum.

The parties also stipulated that the voicemail message traveled in interstate commerce, that Nformangum admitted to law enforcement agents that he left the voicemail and "was reckless with his actions[,] and [that he] expressed remorse for what he has done." After the stipulation was read, the district court admitted the government's exhibits, which included the recordings and transcripts of the voicemail and Nformangum's interview with agents.[1] According to the transcript of the interview, Nformangum told the agents that he "sent a very detailed threat to the senator," and that he "expected some action to be taken by the government," such as being "placed on a watch list," but he did not expect to be arrested.

In closing, Nformangum argued that his voicemail was not a direct threat to Senator Cruz, only his colleagues, and that it was merely "hyperbole, pure and simple." He also noted his as-applied First Amendment challenge.

The district court found Nformangum guilty, explaining that even if the general language about the intended harm to his colleagues could be viewed as hyperbole, the "language individually targeted and threatened Senator Cruz, his family, with knowledge of where he lives." This, it found, was sufficient to establish beyond a reasonable doubt that Nformangum made the communication with the knowledge that it would be heard and viewed as a threat. Nformangum timely appealed.

On appeal, Nformangum argues that the evidence was insufficient to support his conviction because he did not communicate a true threat,

---

[1] Slight discrepancies exist between the joint stipulation read at trial and the transcript admitted as a trial exhibit.

§ 875(c) is unconstitutional as applied to him because his communication involved a matter of public concern, and the indictment was insufficient because it did not allege the requisite mens rea.

## II

We review Nformangum's preserved challenge to the sufficiency of the evidence de novo. *United States v. Crandell*, 72 F.4th 110, 113 (5th Cir. 2023). We "affirm on the sufficiency of the evidence if, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Similarly, we review preserved challenges to the constitutionality of a statute of conviction and the sufficiency of an indictment de novo. *United States v. Howard*, 766 F.3d 414, 419 (5th Cir. 2014); *United States v. Berrios-Centeno*, 250 F.3d 294, 296 (5th Cir. 2001).

## III

Nformangum argues that there is insufficient evidence to support a finding that he uttered a true threat because he did not "express a personal intent to inflict harm" by using "first-person pronouns" and "instead referenced the 'civic duty' of others." We disagree.

Section § 875(c) makes it a crime to "transmit[] in interstate or foreign commerce any communication containing . . . any threat to injure the person of another . . . ." Because "[t]he government may not restrict speech simply 'because of its message, its ideas, its subject matter, or its content[,]'" *United States v. Jubert*, 139 F.4th 484, 490 (5th Cir. 2025) (quoting *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002)), § 875(c) only reaches a "true threat." *United States v. Morales*, 272 F.3d 284, 287 (5th Cir. 2001); *Virginia v. Black*,

538 U.S. 343, 359 (2003). Nformangum's only challenge to the sufficiency of the evidence is that his voicemail does not constitute a true threat.

"True threats are serious expressions conveying that a speaker means to commit an act of unlawful violence." *Counterman v. Colorado*, 600 U.S. 66, 74 (2023) (citation modified). In the phrase "true threat," the word "true" "delineates the speech at issue from jest or hyperbole." *Jubert*, 139 F.4th at 490. A threat is "true" if, "in its context[,] it would have a reasonable tendency to create apprehension that its originator will act according to its tenor." *Morales*, 272 F.3d at 287 (quoting *United States v. Myers*, 104 F.3d 76, 79 (5th Cir. 1997)). In other words, a threat is a "true threat" "if an objectively reasonable person would interpret the speech as a serious expression of an intent to cause a present or future harm." *Jubert*, 139 F.4th at 490 (quoting *Porter v. Ascension Par. Sch. Bd.*, 393 F.3d 608, 616 (5th Cir. 2004)). "The inquiry is twofold: whether a reasonable person would perceive the statement as threatening, and whether the speaker was subjectively aware of its threatening nature." *Id.* (citing *Counterman*, 600 U.S. at 72–73). "[C]ontext is critical." *Bailey v. Iles*, 87 F.4th 275, 285 (5th Cir. 2023) (citing *Watts v. United States*, 394 U.S. 705, 706, 708 (1969)).

Nformangum does not dispute, as he stipulated, that he was subjectively aware of the message's threatening nature. At issue is whether "an objectively reasonable person would interpret [his message] as a serious expression of an intent to cause a present or future harm." *See Jubert*, 139 F.4th at 490. Nformangum's message stated: "Every last one of your Republican colleagues to have signed off on [the 2022 Republican Platform] is to be found and . . . killed, be it by a bullet to the face or by the smashing of a brick in your skull." It also said: "You and every one of your colleagues is to be shot dead, found and killed." The evidence supports a finding that an objectively reasonable person would interpret Nformangum's message as "serious" and concerning "future harm." *See id.*

No. 24-20515

We next consider whether an objectively reasonable person would have interpreted Nformangum's message as an "expression of intent[,]" *see id.*, and that he, as the "originator" of the message, "would act according to [the message's] tenor." *See Morales* 272 F.3d at 287. Nformangum's message said: "It is a civic duty of every American citizen or resident to see to it that every last one of your colleagues is to be killed, be it by finding you in a public space or by trailing you to your very—by your very public homes, the address of which are public knowledge." It also said: "You will be found and killed, as a civic duty of every American to do so." Again, the evidence supports a finding that an objectively reasonable person would have interpreted Nformangum's message as an "expression of intent." *See Jubert*, 139 F.4th at 490.[2]

Nformangum argues that this statement is not a true threat because his message did not use the first person. First, an objectively reasonable person would have interpreted Nformangum as being part of the group of actors—"every American"—he identified in his statement. His message led by saying that he was one of Senator Cruz's "constituents." Second, his other comments indicated that he was willing to commit the violent acts to which he referred. His statement that Senator Cruz's address was "public knowledge" objectively suggests that Nformangum knew where to find Senator Cruz to carry out the violence of which he spoke.[3]

---

[2] Nformangum argues that it was "simply erroneous" for the district court to have concluded that his "language individually targeted and threatened Senator Cruz, his family, with knowledge of where he lives" because he "never mentioned the Senator's family." The government responds that "[t]his threat to kill Senator Cruz at his home reasonably implicates the safety of his family as well." Taking the facts "in the light most favorable to the prosecution[,]" we agree with the government. *See Crandell*, 72 F.4th at 113 (citation modified).

[3] Nformangum suggests that this case is akin to *United States v. O'Dwyer*, 443 F. App'x 18, 19–20 (5th Cir. 2011), which affirmed the dismissal of a § 875(c) indictment

6

Our decision in *United States v. Goltz*, No. 23-10851, 2024 WL 3355355 (5th Cir. July 10, 2024), though unpublished, illustrates the importance of context. In that case, a defendant convicted under § 875(c) challenged the sufficiency of the factual basis supporting his guilty plea. *Id.* at *1. He argued that his online post containing a threatening message was not a true threat because he "did not explicitly threaten that he himself would take action." *Id.* at *2. On plain error review, this court disagreed because "other comments [in his post] indicated that he was personally willing to commit violent acts." *Id.* The entire context of Nformangum's statement leads to the same conclusion here.[4]

Because a rational trier of fact could have found Nformangum's message to be a true threat, sufficient evidence supports his conviction. *See Crandell*, 72 F.4th at 113.

## IV

Nformangum next argues that, because his statement is not a true threat, § 875(c) is unconstitutional as applied to him. The First Amendment does not protect true threats. *Counterman*, 600 U.S. at 69. Because

---

where the defendant emailed a judge's clerk stating, "suppose I become 'homicidal'? Given the recent 'security breach' at 500 Poydras Street, a number of scoundrels might be at risk if I DO become homicidal." Because the statement "did not threaten . . . any particular individual[]" and was "hypothetical and conditional[,]" this court held that it was not a true threat. *Id.* at 20. In contrast, Nformangum's statement was specific and was neither hypothetical nor conditional.

[4] Nformangum also relies on *United States v. Bagdasarian*, 652 F.3d 1113, 1120–21 (9th Cir. 2011) and *United States v. White*, 670 F.3d 498, 513 (4th Cir. 2012), *abrogated on other grounds by, Elonis v. United States*, 575 U.S. 723 (2015). Both cases involved exhortations—calls to others to carry out violence against the statement's subject—and did not convey an intent to commit violence. *See Bagdasarian*, 652 F.3d at 1119; *White*, 670 F.3d at 513. Nformangum's message does not fall within this category.

Nformangum's message was a true threat, his as-applied challenge to § 875(c) fails. *See id.*

## V

Finally, Nformangum argues that the district court erred in declining to dismiss the indictment for failure to allege the requisite mens rea.

## A

The government argues that Nformangum waived this issue because, at a hearing, he agreed that proper jury instructions could cure that defect. Nformangum did move to dismiss the indictment because it did not allege his "subjective understanding of the threatening nature of the alleged statements." We need not decide this issue because, even under the de novo standard for which Nformangum argues, the omission was harmless.

## B

"[A]n indictment must allege each and every element of the crime charged to pass constitutional muster." *United States v. Vidaure*, 861 F.2d 1337, 1341 (5th Cir. 1988) (quoting *United States v. Mullens*, 583 F.2d 134, 141 (5th Cir. 1978)). "As long as the statutory language of the charged offense unambiguously sets out all the necessary elements, an indictment setting forth the offense in the words of the statute itself is generally sufficient." *United States v. Hagmann*, 950 F.2d 175, 183 (5th Cir. 1991). "By any standards, the mens rea element is 'material' or 'essential.'" *Berrios-Centeno*, 250 F.3d at 297 (citation modified).

Section 875(c) "requires that a communication be transmitted and that the communication contain a threat." *Elonis v. United States*, 575 U.S. 723, 732 (2015). "It does not specify that the defendant must have any mental state with respect to these elements." *Id.* Here, the parties agree, as in *Elonis*, that "a defendant under [§] 875(c) must know that he is transmitting a

communication." *See id.* at 737. "But communicating *something* is not what makes the conduct 'wrongful.'" *Id.* "'[T]he crucial element separating legal innocence from wrongful conduct' is the threatening nature of the communication." *Id.* (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73 (1994)).

In *Elonis*, the Supreme Court considered whether § 875(c) "also requires that the defendant be aware of the threatening nature of the communication, and—if not—whether the First Amendment requires such a showing." 575 U.S. at 726. On statutory grounds, the Supreme Court held that a conviction under § 875(c) "cannot stand" without a subjective showing of mens rea. *See id.* at 740. It noted that "[t]here is no dispute that the mental state requirement in [§] 875(c) is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with the knowledge that the communication will be viewed as a threat." *Id.* Because the parties did not challenge whether recklessness could sustain a conviction under § 875(c), the Supreme Court declined to resolve that question. *Id.* at 740–41. Eight years later, it held that "a mental state of recklessness is sufficient." *Counterman*, 600 U.S. at 69.

## C

Applied here, *Elonis* and *Counterman* suggest that the indictment is defective. The indictment charges that Nformangum:

> [D]id knowingly and willfully transmit in interstate and foreign commerce, a communication containing a threat to injure the person of another, to wit, a telephone call to the Office of United States Senator Ted Cruz in Houston, Texas, threatening to injure and kill Senator Ted Cruz, in violation of Title 18 United States Code, Section 875(c).

In *United States v. DeAndino*, the Sixth Circuit characterized the language "knowingly and willfully transmitted" in a § 875(c) indictment as an allegation of general intent rather than specific intent. 958 F.2d 146, 148, 150 (6th Cir. 1992). Our jurisprudence agrees with that characterization. *See United States v. Solomon*, 273 F.3d 1108, *4 (5th Cir. 2001) ("Specific intent concerns willful and knowing engagement in criminal behavior, while general intent concerns willful and knowing acts." (citing *Berrios-Centeno*, 250 F.3d at 298–99)); *see also Jubert*, 139 F.4th at 490 ("The inquiry is twofold: whether a reasonable person would perceive the statement as threatening, and whether the speaker was subjectively aware of its threatening nature." (citing *Counterman*, 600 U.S. at 74)). Because the indictment does not allege Nformangum's subjective state of mind, it fails to state an offense.

But "[e]ven if the indictment fails to state an offense, this court reviews for harmless error." *United States v. Suarez*, 966 F.3d 376, 383 (5th Cir. 2020).[5] "Because an indictment that fails to state an offense is a constitutional error, 'the question is whether the error affects substantial rights.'" *Id.* (quoting *United States v. Robinson*, 367 F.3d 278, 286–87 (5th Cir. 2004)). In answering that question, our broad inquiry is "whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Id.* (quoting *Robinson*, 367 F.3d at 287). "[W]e [also] inquire whether 'on the basis of the evidence that would have been available to the grand jury, any rational grand jury presented with a proper indictment would have charged that [Nformangum] committed the

---

[5] Ultimately, the parties agree that our precedent requires a harmlessness analysis. Nformangum urges us to dismiss the indictment under the analogous case of *United States v. Martinez*, 800 F.3d 1293 (11th Cir. 2015), which dismissed a similar indictment for this precise omission. *Martinez* is distinguishable in that it did not perform a harmlessness analysis and, there, "[b]oth parties agreed that the case should be remanded to the district court for dismissal of the indictment without prejudice." 800 F.3d at 1295 n.1.

offense in question.'" *See id.* at 384 (quoting *Robinson*, 367 F.3d at 288); *see also United States v. Dentler*, 492 F.3d 306, 311 (5th Cir. 2007) ("We must . . . consider whether [the defendant] suffered harm in losing the right to have the public determine whether there existed probable cause to charge the missing element.").

The first consideration is whether, despite its omission, the indictment served its core purpose of "provid[ing] notice of the crime for which the defendant has been charged, allowing him the opportunity to prepare a defense . . . ." *Suarez*, 966 F.3d at 384 (quoting *Robinson*, 367 F.3d at 287); *Berrios-Centeno*, 250 F.3d at 297 ("The Sixth Amendment requires, *inter alia*, that a defendant be fairly informed of the charges filed against him."). Here, the indictment put Nformangum on notice of the government's theory that he conveyed a true threat to Senator Cruz, and Nformangum does not contend otherwise. *See Suarez*, 966 F.3d at 384.

The next consideration is whether the indictment's omission harmed the grand jury proceedings. "Once a trial takes place . . . there is little a court of appeals can do to restore a defendant that which was lost: the right not to face a prosecution initiated solely at the government's behest." *Dentler*, 492 F.3d at 311 (quoting *Robinson*, 367 F.3d at 287). Based on "the evidence that would have been available to the grand jury," we consider only whether "any rational grand jury presented with a proper indictment would have charged" Nformangum with violating § 875(c). *Id.* (quoting *Robinson*, 367 F.3d at 288); *Suarez*, 966 F.3d at 384.

Nformangum concedes that the grand jury had access to "his statement under custodial interrogation." In that statement, he specifically told agents that his message to Senator Cruz "was reckless" and that "during the recording [of the voicemail]—afterwards, [he] . . . expected some action to be taken by the government." Nformangum admitted to acting with the

No. 24-20515

mens rea *Counterman* permits—recklessness. *See Counterman*, 600 U.S. at 69. A "rational grand jury presented with a proper indictment would have charged" Nformangum with violating § 875(c). *See Dentler*, 492 F.3d at 311.

Finally, the district court, acting as the fact finder, concluded that Nformangum did act with the requisite degree of subjective knowledge under *Counterman*. Again, Nformangum stipulated to that requisite degree of subjective knowledge. For that reason, "it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *See Robinson*, 367 F.3d at 287 (quoting *Chapman v. California*, 386 U.S. 18, 23 (1967)).

VI

AFFIRMED.

12